Merrimack
No. 82-211

## The State of New Hampshire

v.

## Wayne Aldrich

October 5, 1983

44

*Gregory H. Smith*, attorney general (*Gregory W. Swope*, attorney, on the brief and orally), for the State.

*Law Offices of Robert V. Johnson, II*, of Concord (*Anthony M. Ambriano* on the brief and orally), for the defendant.

DOUGLAS, J. The defendant, Wayne Aldrich, appeals his conviction in Superior Court (*Cann*, J.) for escape from official custody, RSA 642:6. The issues presented for our review are whether the State may properly charge the defendant with "knowingly" escaping from official custody, when the escape statute itself (RSA 642:6)

does not prescribe a culpable mental state, and whether the admission of certain inadmissible hearsay evidence was harmless error. For the reasons which follow, we affirm the defendant's conviction.

In January 1980, the defendant was sentenced to concurrent terms of two-and-one-half to five years in the State prison for two burglaries. Pursuant to RSA 651:25, I (Supp. 1981), he was transferred to the Community Correction Center (half-way house) in Concord in September 1981, in preparation for his release from custody after a minimum of ninety days.

On October 13, 1981, the defendant left the half-way house at approximately 10:30 p.m. to work at the Concord Litho Company, which was located three miles away. He was employed there on the midnight-to-8:00 a.m. shift. According to a logbook maintained at the half-way house, which was admitted into evidence at the defendant's trial over his objection and exception, the defendant failed to report to work and was reported "escaped." The defendant was arrested by Peterborough police officers at an apartment in that town at 8:00 p.m. on October 14, 1981, twelve hours after the defendant's work shift ended and he was due to return to the half-way house. The police officers testified that the defendant appeared to be intoxicated at the time of his arrest.

The defendant was charged with escape, a class B felony, *see* RSA 642:6, by an indictment which alleged that he

> "did *knowingly* escape from official custody at the Community Correction Center of the New Hampshire State Prison, having been confined at said Prison by Order of the Merrimack County Superior Court on January 28, 1980 in that said Wayne Aldrich *did not report for work on said date when granted temporary release for that purpose and did not return to the Community Correction Center at the appointed time . . . ."*

(Emphasis added.) "Knowingly" is defined in our Criminal Code as follows: "A person acts knowingly with respect to conduct or to a circumstance that is a material element of an offense when he is *aware that his conduct is of such nature or that such circumstances exist."* RSA 626:2, II(b) (emphasis added).

The defendant moved before trial to quash the indictment on the ground that the statute defining the offense of escape, RSA 642:6, does not specify a particular culpable mental state, and that in the absence of a statutorily specified mental state the State was obligated to prove that he acted "purposely," the highest culpable mental state. "Purposely" is statutorily defined as follows: "A person acts purposely with respect to a material element of an offense when his

*conscious object is to cause the result or engage in the conduct that comprises the element."* RSA 626:2, II(a) (emphasis added). The court denied the motion.

At his trial in April 1982, the defendant's defense was that he was so intoxicated after he left the half-way house that he could not have "knowingly" escaped from official custody. *See* RSA 626:4. The jury apparently did not believe the defendant because it found him guilty of escape. He was sentenced to one-and-one-half to three years in the State prison, to be served consecutively to the unexpired terms of the burglary sentences. *See* RSA 642:6, IV (Supp. 1981).

RSA 642:6 defines escape as follows: "A person is guilty of an offense if he escapes from official custody." Even though the statute specifies no culpable mental state, a prosecution for escape, which is either a class A or a class B felony, depending upon whether force is used during the commission of the offense, *see* RSA 642:6, III (Supp. 1981), may not be sustained in the absence of proof of a *mens rea.* RSA 626:2, I of the Criminal Code provides that "[a] person is guilty of . . . a felony . . . only if he acts purposely, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense."

■ We do not read this provision as vesting prosecutors with unfettered discretion to charge any one of the four culpable mental states, depending upon the circumstances of a particular case, wherever a criminal statute fails to prescribe a specific mental state. Such an interpretation, for instance, would leave prosecutors free to charge escape defendants criminally for acting "negligently," a mental state not even requiring awareness of the circumstances of the offense. *See* RSA 626:2, II(d). This interpretation would be broader than even the standard set forth in section 2.02(3) of the Model Penal Code, which provides: "When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts *purposely, knowingly or recklessly* with respect thereto." MODEL PENAL CODE § 2.02(3) (1962) (emphasis added).

■ Absent a more clearly manifested legislative intent, we refuse to construe RSA 626:2 to permit a criminal defendant to be charged with whichever one of the four culpable mental states defined therein a prosecutor may choose, where a specific mental state is not provided for the offense. Rather, we read RSA 626:2, I as requiring proof of a culpable mental state which is appropriate in light of the nature of the offense and the policy considerations for punishing the conduct in question.

██ Nor are we willing to accept the defendant's sweeping assertion that the State must prove the culpable mental state of "purposely," the most difficult mental state to establish, for any offense where a mental state is not statutorily specified. We do not believe that such a categorical statutory construction either is constitutionally required or comports with the legislature's intent in enacting the Criminal Code. Instead, pursuant to the legislature's direction, we will construe RSA 642:6 "according to the fair import of [its] terms and to promote justice." RSA 625:3. We emphasize that our analysis here is necessarily confined to the statute before us. Our interpretation of the culpable mental state required for commission of the offense of escape must be guided by the common-law origins of the crime and the policy justifications for imposing a criminal sanction.

██ The United States Supreme Court recently addressed the precise legal issue presently before this court. In *United States v. Bailey*, 444 U.S. 394 (1980), the Court construed the federal escape statute, *see* 18 U.S.C.A. § 751(a) (Supp. 1983), which, like RSA 642:6, sets forth no culpable mental state for the commission of the offense. Rejecting the assertion that the prosecution should be required to prove that a defendant escaped "with an intent to avoid confinement," a standard comparable to the definition of "purposely" contained in RSA 626:2, II(a), the Supreme Court held that "the prosecution fulfills its burden under § 751(a) if it demonstrates that an escapee *knew* his actions would result in his leaving physical confinement without permission." 444 U.S. at 408 (emphasis added).

The Court found nothing in the language or legislative history of the federal statute to indicate the culpable mental state required for conviction. *Id.* at 406. Turning to scholarly discussions of the nature of the elements of intent in the criminal law, the Court noted that the distinction between the mental states of "purposely" and "knowingly" in modern criminal codes is perhaps the "most esoteric" differentiation among any of the four commonly identified mental states. *Id.* at 404. The basis for this conclusion was that:

> "In the case of most crimes, 'the limited distinction between knowledge and purpose has not been considered important since "there is good reason for imposing liability whether the defendant desired ["purposely"] or merely knew of the practical certainty of the results ["knowingly"]." ' "

*Id.* (citations omitted). As the Supreme Court noted in a decision two years before *Bailey:* "In either circumstance, the defendant[] [is] consciously behaving in a way the law prohibits, and such conduct is

a fitting object of criminal punishment." *United States v. United States Gypsum Co.*, 438 U.S. 422, 445 (1978).

■ Although the *Bailey* Court's construction of the *mens rea* requirement under the federal escape statute obviously is not binding on this court's construction of our State escape statute, we find the reasoning of that decision to be highly persuasive as to what culpable mental state must be proved in a prosecution for escape under RSA 642:6. The language of the State and federal statutes is similar, and the language and legislative history of our escape statute, like those of the federal escape statute, reveal no indication as to what *mens rea* the legislature contemplated when it enacted RSA 642:6. After reviewing the cases and commentary cited in *Bailey* concerning the common-law offense of escape and the treatment of *mens rea* in general, we are convinced that a criminal defendant may properly be convicted of escape under RSA 642:6 based upon evidence that he "knowingly" departed from official custody without authority. Accordingly, we adopt the reasoning of *Bailey*. We hold that the State does not have to prove that the defendant "purposely" escaped from official custody.

■■ Requiring the State to prove only "knowledge," rather than "purpose," not only is consistent with the prevailing authority regarding the culpable mental state for the offense of escape, but also comports with what we believe to be the fair import of RSA 642:6 and promotes justice. *See* RSA 625:3. One commentator observed recently:

> "[K]nowledge emerges as the most sensible standard of mental culpability in escape cases. The obvious aim of escape statutes is to deter prisoners from escaping. But prisoners who are not aware that they are escaping cannot be deterred by the prospect of additional punishment. Prisoners who are aware of the circumstances that would make their actions an escape, however, could be deterred by the possibility of added punishment. Knowledge of the circumstances that make the act an escape is the psychological threshold at which an escape statute begins to have a deterrent effect. . . . Knowledge of the circumstances is therefore the preferable standard of culpability because it effectuates the statutory purpose of deterring prison escapes in a fair and straightforward manner."

Comment, *Intent, Duress, and Necessity in Escape Cases*, 68 Geo. L.J. 249, 254 (1979). While the issue before us is limited to whether "knowingly" is a permissibly chargeable *mens rea* for the

offense of escape, we hold that "knowledge" is the *minimum* level of mental culpability that the State must prove to sustain a prosecution under RSA 642:6. Consequently, proof that a defendant "negligently" or "recklessly" escaped from official custody is legally insufficient to sustain a conviction of violating RSA 642:6.

 In the instant case, the trial judge clearly instructed the jury that the State bore the burden of proving beyond a reasonable doubt that the defendant "had the culpable mental state of knowing that he escaped from official custody . . . ." The defendant has never contested the sufficiency of the evidence to support a jury finding of knowledge, *see United States v. Bailey*, 444 U.S. at 407–08, but argues instead that the State was obligated to prove that he "purposely" escaped. Because we have construed RSA 642:6 as requiring only proof of "knowledge," we must affirm the defendant's conviction on this ground.

 The defendant's contention that prior escape prosecutions in Merrimack County were based on the culpable mental state of "purposely" provides no basis for reversal of his conviction. Before today, we had never construed the mental culpability requirement for escape under RSA 642:6. The only effect of this holding on previous Merrimack County escape prosecutions alleging "purposely" is to justify the conclusion that the defendants in those cases received the benefit of the State's election to satisfy a higher legal standard than was necessary in order to obtain convictions. The defendant may not also use this fact as a ground for reversal of his conviction, where there was sufficient evidence to support the lesser culpable mental state of knowledge required under RSA 642:6.

The second issue raised by the defendant concerns the admission into evidence of a logbook kept at the half-way house indicating the whereabouts of inmates who leave the facility on work release. The defendant's indictment alleged that he "did not report for work . . . when granted temporary release for that purpose *and* did not return to the Community Correction Center at the appointed time." (Emphasis added.) The trial judge instructed the jury that it would have to find that the State proved *both* of these facts in order to return a guilty verdict against the defendant.

The defendant asserts, and the State concedes, that the logbook was inadmissible hearsay that did not fall within any of the exceptions to the hearsay rule. Because the logbook was the only evidence that the defendant did not report for work, he claims that the State failed to prove an essential element of the offense and that his conviction must be reversed. The State argues, however, that proof that the defendant did not return to the half-way house was a sufficient

independent basis to support the guilty verdict, and that the allegation in the indictment that he did not report for work, therefore, was not an essential element of the escape offense. We agree with the State's position.

 "[A]verments in an indictment that are in excess of those required by the statute defining the offense may be treated as superfluous, and thus do not necessarily control the State's burden of proof." *State v. Boone*, 119 N.H. 594, 596, 406 A.2d 113, 114 (1979) (citing *State v. Webster*, 39 N.H. 96, 97 (1859)); *see State v. Langdon*, 121 N.H. 1065, 1069–70, 438 A.2d 299, 302 (1981). In this case, the allegation that the defendant did not report for work was not an essential element of the escape charge, in light of the allegation in the indictment that he did not return to the half-way house at the appointed time. Proof that the defendant knowingly failed to report to the half-way house was sufficient to sustain a conviction under RSA 642:6. The fact that the trial judge mistakenly instructed the jury that they also had to find beyond a reasonable doubt that the State had proved that the defendant did not report for work did not, therefore, make it an essential element of the offense.

 Because there was sufficient evidence to support a finding that the defendant failed to return to the half-way house, we hold that the admission of inadmissible hearsay to prove that he failed to report for work was harmless error. *State v. Hughes*, 122 N.H. 781, 783–84, 451 A.2d 372, 374 (1982).

*Affirmed.*

SOUTER, J., did not sit; the others concurred.