Strafford
No. 91-272

# THE STATE OF NEW HAMPSHIRE

v.

# ANTHONY AYER

September 1, 1992

*John P. Arnold,* attorney general (*Diane M. Nicolosi,* assistant attorney general, on the brief and orally), for the State.

*James E. Duggan,* chief appellate defender, of Concord, by brief and orally, for the defendant.

BATCHELDER, J.  The defendant, Anthony Ayer, appeals his conviction, after a jury trial in Superior Court (*Dunn,* J.), of aggravated felonious sexual assault, RSA 632-A:2. He contends that the trial court erred in not dismissing the indictment for charging "knowingly" as the requisite mental element, and in refusing to instruct the jury that, to convict, it must find that the defendant knew that the victim did not consent. We affirm.

On the evening of May 4, 1990, the victim and a friend attended a small party at the Dover apartment of a friend, Mark Tallent. The defendant was among the ten or fifteen people there, and when the victim arrived, he introduced himself to her. She ignored him and he walked away. After drinking about four beers, the victim felt a bit intoxicated and tired. At 1:00 a.m., feeling ill, she went into Tallent's bedroom and lay down on the bed, fully clothed, under a blanket, and went to sleep. She awoke to find that she was undressed from the waist down and that the defendant was on top of her having intercourse. Jumping out of bed screaming, the victim wrapped herself in the blanket and ran out of the room. Still hysterical, she ran to the kitchen, picked up a knife, and ran back to the bedroom. Because her friends restrained her, she was unsuccessful in her attempts to stab the defendant.

The victim went to the hospital and gave a statement to the police. On May 7 the defendant was arrested. He first told the police that he had gone into the bedroom just to be with the victim, and, although he stripped and lay down next to her, he did not touch her. Later he admitted to the police that he did touch her and said that she was fully dressed and awake when he lay down. At trial he testified that he is an alcoholic who experiences "blackouts" and could remember nothing about what happened until the victim began to scream. He did remember that the victim had at no point earlier in the evening indicated any attraction to him, and admitted he had no reason to believe she had consented to having intercourse with him.

The defendant first argues that the trial court erred in denying his motion to dismiss the indictment. The indictment charged that he

"did knowingly engage in sexual penetration with another person, under circumstances in which, by the element of

surprise he was able to cause sexual penetration with the victim before the victim had an adequate chance to flee or resist; in that, Anthony Ayer engaged in sexual intercourse with [the victim] without her consent while she was asleep and unable to flee or resist[.]"

According to the defendant, by charging that he acted "knowingly" rather than "purposely," the indictment was defective.

We have never before been squarely presented with the issue of the correct *mens rea* for the offense of aggravated felonious sexual assault. Dicta in several of our cases is relied upon by the defendant. *See State v. Pond*, 133 N.H. 738, 740, 584 A.2d 770, 771 (1990) (after *nol pros* of "knowingly" indictment, grand jury "correct[ed] the *mens rea* to 'purposely'"); *State v. Hickey*, 129 N.H. 53, 61, 523 A.2d 60, 65 (1986) (defendant "was charged with acting purposely"); *State v. Smith*, 127 N.H. 433, 436, 503 A.2d 774, 776 (1985) (defendant "must have purposely engaged in sexual penetration"); *State v. Shute*, 122 N.H. 498, 504, 446 A.2d 1162, 1165 (1982) (indictment charged defendant did "'purposely engage in sexual penetration'"). Because the sufficiency of the indictments was not at issue, our references to the mental state in these cases merely parroted what had been alleged. These prior decisions, therefore, do not control our decision today. *See also State v. Dukette*, 122 N.H. 336, 337, 444 A.2d 547, 549 (1982) (indictment sufficient that alleged defendant "'did knowingly engage in sexual penetration'").

RSA 632-A:2 (1986 and Supp. 1991) defines the offense of aggravated felonious sexual assault in its eleven variants. While the underlying act common to each variant is sexual penetration, no *mens rea* is expressed in the statute. Notwithstanding this omission, one cannot be convicted of this felony without proof that the act was accompanied by a culpable mental state. RSA 626:2, I ("A person is guilty of . . . a felony . . . only if he acts purposely, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense.").

In *State v. Aldrich*, 124 N.H. 43, 466 A.2d 938 (1983), we provided an analytical framework for determining the proper *mens rea* when the statute defining an offense is silent thereon: "[W]here a specific mental state is not provided for the offense . . . , we read RSA 626:2, I, as requiring proof of a culpable mental state which is appropriate in light of the nature of the offense and the policy considerations for punishing the conduct in question." *Id.* at 47, 466 A.2d at

940. We therefore look to "the common-law origins of the crime," *id.* at 48, 466 A.2d at 941, as a guide.

Rape, the common law counterpart to aggravated felonious sexual assault, is held by the overwhelming weight of authority to be a general intent, rather than a specific intent, crime. *People v. Langworthy*, 416 Mich. 630, 643 and n.21, 331 N.W.2d 171, 176 and n.21 (1982) (and cases cited therein). Whereas specific intent commonly refers to a special mental element above and beyond that required with respect to the criminal act itself, W. LaFave & A. Scott, Criminal Law § 3.5 (2d ed. 1986), the general intent requirement for rape means that "no intent is requisite other than that evidenced by the doing of the acts constituting the offense." 75 C.J.S. *Rape* § 9, at 471 (1952).

The Model Penal Code, from which our statutory culpable mental states derive, discarded the language of general and specific intent in favor of "purposely," "knowingly," "recklessly," and "negligently." In general, however, "'purpose' corresponds loosely with the common-law concept of specific intent, while 'knowledge' corresponds loosely with the concept of general intent." *United States v. Bailey*, 444 U.S. 394, 405 (1980). The distinction between "knowingly" and "purposely" is important when the heightened mental state corresponding to specific intent is required, such as with the offenses of "attempts, complicity and conspiracy, where a true purpose to effect the criminal result is a requisite for liability." Model Penal Code and Commentaries § 2.02, at 234 (1985); *see, e.g., State v. Davis*, 108 N.H. 158, 160, 229 A.2d 842, 844 (1967) (in prosecution for attempted rape "it was necessary to prove that the defendant intended to have sexual intercourse with the complaining witness").

In most instances, however, the most that is required is that the defendant act "knowingly," Model Penal Code and Commentaries, *supra*, that is, that he "be aware that it is practically certain that his conduct will cause a prohibited result." *State v. Weitzman*, 121 N.H. 83, 89, 427 A.2d 3, 7 (1981). On the other hand, requiring that an attempt or other inchoate crime be committed "purposely" protects "against conviction on slight evidence. The same protection is unnecessary where substantial overt acts are committed and fully consummated offenses are provable." *United States v. Thornton*, 498 F.2d 749, 753 (D.C. Cir. 1974). The defendant does not claim that charging he acted "knowingly" rather than "purposely" does not adequately protect him from criminal prosecution for innocent conduct. Engaging in sexual penetration in any of the statutorily prohibited circumstances is criminal when the actor "is aware that his conduct

is of such a nature or that such circumstances exist," RSA 626:2, II(b), that is, when he acts "knowingly."

■ The defendant argues that, because we held in *State v. Brewer*, 127 N.H. 799, 508 A.2d 1058 (1986), that "purposely" and "intentionally" are synonymous, and stated in *State v. Davis*, 108 N.H. 158, 229 A.2d 842, that the State must prove the defendant intended to have sexual intercourse, the requisite mental state is "intentionally," or "purposely." *Davis* involved a charge of attempted rape. As noted above, attempt is a specific intent crime and thus requires proof that the defendant acted purposely. *See* RSA 629:1, I (person is guilty of attempt if he takes substantial step toward commission of crime "with a purpose that a crime be committed"). Although we stated in *Davis* that the same intent was required for rape and attempted rape, the context makes clear that this was dicta, and, insofar as it may be inconsistent with our holding today, is overruled. The indictment charging the defendant with acting "knowingly" was not infirm.

Next the defendant challenges the trial court's refusal to instruct the jury that the State had to prove beyond a reasonable doubt that the defendant actually knew that the victim did not consent. The State counters that lack of consent is not an element of the offense to which the defendant's mental state applies.

■■ In *State v. Cooper*, 135 N.H. 258, 603 A.2d 499 (1992), we held that although consent is a defense that must be negatived by the State if raised, lack of consent is not an element of sexual assault; our reasoning there applies equally to the offense of aggravated felonious sexual assault. RSA 626:2, I, which provides that a generally prescribed level of culpability for an offense "shall apply to all the material elements," thus does not apply to a victim's lack of consent. The statute providing the defense of consent itself contains no mental element with respect to a defendant's awareness that the victim did not consent. *See* RSA 626:6. No statutory authority, therefore, exists for a requirement that the defendant actually know that the victim did not consent. "If the element of the defendant's belief as to the victim's state of mind is to be established as a defense to the crime of rape then it should be done by our legislature which has the power to define crimes and offenses." *Com. v. Williams*, 439 A.2d 765, 769 (Pa. Super. 1982).

■ The defendant argues that the purported lack of consent must be communicated to a defendant in some way in order for him

to be guilty. To the extent he means by this that the victim must manifest her unwillingness objectively, the defendant is correct. If, however, the victim objectively communicates lack of consent and the defendant subjectively fails to receive the message, he is guilty. The appropriate inquiry is whether a reasonable person in the circumstances would have understood that the victim did not consent. *See People v. Witte*, 115 Ill. App. 3d 20, 26 n.2, 449 N.E.2d 966, 971 n.2 (1983).

The trial court instructed the jury at length and accurately on the issue of consent. Because the instruction requested by the defendant did not correctly state the law, its omission by the trial court was not error.

*Affirmed.*

All concurred.