895 A.2d 327

**Charles Levi MAXWELL**

v.

**STATE of Maryland.**

**No. 1882, Sept. Term, 2003.**

Court of Special Appeals of Maryland.

March 30, 2006.

2

Stacy W. McCormack (Nancy Forster, Public Defender, on the brief), Baltimore, for appellant.

Kathryn Grill Graeff (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for appellee.

Panel: DAVIS, ADKINS, and MEREDITH, JJ.

MEREDITH, J.

Charles Levi Maxwell, appellant, a 33–year–old former high school teacher, was convicted by a Howard County jury of sexual offense in the third degree and attempted second degree rape for having lured a 13–year–old girl to engage in sexual activity with him. For the two convictions, Maxwell was given concurrent sentences of imprisonment with all but four years suspended.

Maxwell has not appealed his conviction for the third degree sexual offense, but attacks his conviction for attempted second degree rape on three grounds. Maxwell contends that: (1) there can be no criminal liability for attempted statutory rape when that offense is based upon strict liability for sex with an underage partner; (2) the trial court erred in the instructions it gave the jury regarding attempt; and (3) the evidence was insufficient to support the conviction for attempt because the State did not establish that Maxwell took a substantial step beyond mere preparation for sexual intercourse. Perceiving no error, we shall affirm the conviction.

## 1. Background

On New Year's Day of 2003, a girl we will refer to in this opinion as SG was 13 years old, one week shy of her 14th birthday. She was an eighth grade student, at home on a holiday. Feeling bored, she logged onto the internet, and,

using her AOL screen name, entered a chat room she had previously visited. This particular chat room was devoted to romance.[1]

In the romance chat room, SG began chatting with Maxwell, who utilized the screen name "deepeyesforyou69." SG told Maxwell that she was a 14–year–old girl who lived in Howard County, Maryland. Maxwell replied that he lived in Baltimore County, and suggested they meet. The chat included references to sex and SG's insistence upon the use of a condom. Maxwell asked for her telephone number and address. As she had done on other occasions, SG gave her telephone number to a person whom she had met through an internet chat room, in this instance, Maxwell. Maxwell called SG, and they continued their conversation. At some point, he told her he was in his 20's and that his name was Craig. They made plans for Maxwell to drive to Howard County to pick her up later that

---

1. "A chat room is an area on the Internet that enables people with similar interests to communicate by typing back and forth in real time." *Attorney Grievance v. Childress*, 360 Md. 373, 377 n. 4, 758 A.2d 117 (2000). SG and appellant also used "instant messaging" to conduct a dialogue via the internet. These two forms of internet communication were recently described by a federal district court:

> One cannot get a clear picture of this case without an understanding of internet chat rooms and instant messaging, two relatively recent forms of electronic communication. The instant case begins in an internet chat room, which is not a place, *per se*, but, instead a method for anyone with a computer and a connection to the internet to converse—instantly—with others similarly equipped about a common interest. Chat room conversations appear as text on a computer screen, with the participants' screen names followed by the text of their conversations. Many chat rooms have innocuous or wholesome topics—health matters, local events, *etc.*—while others, such [as the] one in the instant case, are devoted to a more sinister purpose. Chat rooms often have moderators and can thus be monitored; in addition, chat rooms are designed to facilitate conversations among large groups of people—up to twenty-three in the present case. For these reasons, once the electronic chats between two "chatters" turn to specific content where privacy (or discussion of illegal activity) becomes a concern, they then turn to an instant messaging service—a two-way instantaneous text communication similar to a chat room—but with no one to monitor.

*Slattery v. United States*, 2005 WL 2416339 *1 (N.D.Miss. Sept.30, 2005).

same afternoon. SG gave Maxwell her address and told him she would wait for him at the end of her street.

SG told her mother that she was going out for a walk, and then waited on the street corner for Maxwell to show up. Maxwell drove his car to the corner where SG was waiting. He rolled down the window and asked if she was SG, and then invited her to get in his car. She recognized his voice and entered the car. After SG got into the car, Maxwell asked her if there was a church nearby, and SG directed him to a nearby church. Maxwell pulled into the deserted parking lot of the church and parked far from the church buildings.

According to SG, Maxwell then began kissing her and fondling her breasts. He then lifted her shirt and bra and began kissing her exposed breasts. When Maxwell asked her to remove her pants, SG complied by pushing her sweat pants and underpants down to her ankles, after which Maxwell used his hands to push her legs apart and feel inside her vagina.

At some point, Maxwell took out a video camera and asked SG if it was okay to record what they were doing. She told him it was not okay, but she was suspicious that when he placed the camera on the dashboard of the car he left the camera on in spite of what she said.

Maxwell lowered SG's seatback to the reclining position and told SG to turn on her stomach. When she complied, he fondled and kissed her bare buttocks.

Maxwell then told SG to turn over again, and he pushed down his own pants and placed her hand on his penis while he touched her vagina. Maxwell pulled a condom out of a little box that was in the passenger compartment. At that moment a car began to enter the parking lot area. Maxwell said "car," and told SG to fix her clothing as he did likewise.

Maxwell asked SG if she wanted to go and "finish it" at a different church, but she responded that she just wanted to go home. At her request, Maxwell drove SG to her friend's house, dropped her off, and then drove away.

Feeling nervous, ashamed, and a little sick to her stomach, SG told her friend, who was also an eighth grade student,

what she had just experienced. SG's friend convinced her to go home and tell SG's mother. SG told her mother, who called the police. Later on that same day, a police officer came to SG's home and interviewed her.

Under police supervision, SG entered the romance chat room again on January 3, 2003, and was promptly contacted by deepeyesforyou69. Acting upon instructions from the police, who hoped to apprehend the man known to SG as deepeyesforyou69 and Craig, SG scheduled a second rendezvous with Maxwell for January 7. When Maxwell appeared at the appointed time and location on January 7, he was arrested. Maxwell commented to the arresting detective, "my career is over."

## 2. Discussion

### A. In Maryland, attempted rape in the second degree is a statutory felony offense.

██ The version of second degree rape that Maxwell is alleged to have attempted to commit is sometimes referred to as statutory rape, currently proscribed by Md.Code (2002), Criminal Law Article ("CL"), § 3–304(a)(3), which provides: "A person may not engage in vaginal intercourse with another . . . [i]f the victim is under the age of 14 years, and the person performing the act is at least 4 years older than the victim." Maxwell points out that the Court of Appeals has held that this statute imposes strict liability upon the offender, that no proof of *mens rea* is required, and that a good faith mistake of age is not a defense. *Garnett v. State,* 332 Md. 571, 584–85, 632 A.2d 797 (1993); *accord Owens v. State,* 352 Md. 663, 690, 724 A.2d 43, (the statute does not offend the constitution), *cert. denied,* 527 U.S. 1012, 119 S.Ct. 2354, 144 L.Ed.2d 250 (1999). *See also Walker v. State,* 363 Md. 253, 265–66, 768 A.2d 631 (2001) (mistake of age is not a defense to age-based third degree sexual offense defined by CL § 3–307(a)(5)). In light of the holdings in *Garnett* and *Owens* that age-based second degree rape is a strict liability crime, Maxwell argues that, "[a]s a matter of law, one cannot attempt to commit a strict

liability offense," and therefore his conviction for attempted rape in the second degree must be vacated.[2]

■ Maxwell overlooks the fact that he was not convicted of common law misdemeanor attempt, *see Dabney v. State,* 159 Md.App. 225, 234–35, 858 A.2d 1084 (2004), but was convicted of a separate statutory felony offense, *viz.,* CL § 3–310, which expressly provides: "A person may not attempt to commit rape in the second degree." Further, the trial court specifically instructed the jury that in order to convict Maxwell of attempted rape in the second degree the jury would have to find, as one element, that "the defendant intended to commit the crime of second degree rape." We agree with the appellate courts from a number of other states that have rejected the argument made by Maxwell and have concluded that the State may impose liability for attempted statutory rape.[3]

■ In *State v. Sines,* 158 N.C.App. 79, 579 S.E.2d 895, *cert. denied,* 357 N.C. 468, 587 S.E.2d 69 (2003), the defendant was convicted of attempted statutory sexual offense. He moved to dismiss the charge, asserting that the attempted statutory offense was a "logical impossibility" under North Carolina law. This contention was rejected. The North

---

**2.** Appellant acknowledges that this argument is raised for the first time on appeal, but contends that the argument that attempted statutory rape is not a crime goes to the "jurisdictional sufficiency" of the conviction and is a matter properly before this Court. Based upon the holding in *Lane v. State,* 348 Md. 272, 279, 703 A.2d 180 (1997), a case in which the Court of Appeals considered a similar argument that was raised in the first instance on appeal, we agree that Maxwell may assert this argument. *See Townes v. State,* 314 Md. 71, 74, 548 A.2d 832 (1988).

**3.** *See State v. Sorabella,* 277 Conn. 155, 891 A.2d 897 (2006); *State v. James,* 265 Neb. 243, 248, 655 N.W.2d 891, 896 (2003); *State v. Davis,* 108 N.H. 158, 162, 229 A.2d 842, 845 (1967), *overruled on other grounds, State v. Ayer,* 136 N.H. 191, 612 A.2d 923 (1992); *In the Matter of Brion,* 161 A.D.2d 832, 834, 555 N.Y.S.2d 881, 883 (N.Y.App.Div. 1990); *State v. Sines,* 158 N.C.App. 79, 85, 579 S.E.2d 895, 900, *cert. denied,* 357 N.C. 468, 587 S.E.2d 69 (2003); *State v. Chhom,* 128 Wash.2d 739, 743, 911 P.2d 1014, 1016–17 (1996); *State v. Brienzo,* 267 Wis.2d 349, 363–64, 671 N.W.2d 700, 707 (Wis.App.), *review denied,* 268 Wis.2d 133, 673 N.W.2d 691 (2003).

Carolina intermediate appellate court explained, in a passage that merits extended quotation:

In order to prove an attempt of any crime, the State must show: "(1) the intent to commit the substantive offense, and (2) an overt act done for that purpose which goes beyond mere preparation, but (3) falls short of the completed offense." [4] *State v. Miller*, 344 N.C. 658, 667, 477 S.E.2d 915, 921 (1996) (citing *State v. Collins*, 334 N.C. 54, 431 S.E.2d 188 (1993)). An act must be done with specific intent to commit the underlying crime before a defendant may be convicted of an attempted crime. *See State v. Coble*, 351 N.C. 448, 527 S.E.2d 45 (2000). Here, the evidence in the light most favorable to the State shows that defendant committed an overt act that would have aided in the commission of statutory sexual offense. Defendant's placement of his penis in front of victim's face, coupled with his demand for oral sex, comprise an overt act sufficient to satisfy the second element of attempt. . . .

The remaining element is the intent to commit the substantive offense. Defendant argues that it is logically impossible to have the specific intent to commit a strict liability crime which does not require a specific intent. . . . Defendant argues that since our State does not recognize attempted general intent crimes, it cannot logically recognize attempted strict liability or non-intentional crimes. We disagree.

We find the reasoning of the Washington Supreme Court in *State v. Chhom* persuasive in this case. *See State v. Chhom*, 128 Wash.2d 739, 911 P.2d 1014 (1996). The Revised Code of Washington contains a statute which is similar in form and function to our G.S. § 14–27.7A. The crime is entitled "rape of a child" and is defined as having "sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim." Wash.

---

4. The failure to complete the substantive crime is not an element of attempt under Maryland Law. *Lane, supra*, 348 Md. at 284, 703 A.2d 180.

Rev.Code Ann. § 9A.44.073 (West 2000). A second- and third-degree level of this offense are also defined in the statutes for offenses involving children of different ages. Wash. Rev.Code Ann. §§ 9A.44.076 and 9A.44.079 (West 2000). In *Chhom*, a defendant was convicted of attempted rape of a child after the victim refused to perform fellatio on defendant. *See Chhom*, 911 P.2d at 1015. The Washington Supreme Court held that the strict liability offense could form the basis of a conviction for attempt. 911 P.2d at 1017. The court stated: "When coupled with the attempt statute, the intent required for attempted rape of a child is the intent to accomplish the criminal result: to have sexual intercourse." 911 P.2d at 1016–17. The defendant was not required to have knowledge that the victim was under the age of consent in order to be convicted of attempted rape of a child. 911 P.2d at 1017 (citing *State v. Davis*, 108 N.H. 158, 229 A.2d 842, 844 (1967), overruled on other grounds by *State v. Ayer*, 136 N.H. 191, 612 A.2d 923 (1992)). Requiring a defendant to have knowledge of a minor's age in order to convict him for attempt would not be logical if the defendant could be convicted of the completed crime regardless of his knowledge of the victim's age.

Applying the *Chhom* logic to our G.S. § 14–17.7A (a) statutory sexual offense, the intent required for attempted statutory sexual offense is the intent to engage in a sexual act. The intent element of attempted statutory sexual offense does not require that the defendant intended to commit a sexual act with an underage person, but only that defendant intended to commit a sexual act with the victim. Defendant's knowledge of victim's age or victim's consent are not defenses to the crime of attempted statutory sexual offense, just like these defenses are not valid if the crime of statutory sexual offense is completed. We hold that the crime of attempted statutory sexual offense is valid under North Carolina law.

*Sines, supra*, 158 N.C.App. at 84–86, 579 S.E.2d at 899–900.

We believe that the reasoning in these cases applies with even greater force in Maryland, in light of the statutory

scheme enacted by our legislature that specifically makes it a felony for a person to "attempt to commit rape in the second degree," *i.e.*, CL § 3–310(a). We are satisfied that the General Assembly acted within its authority to enact CL § 3–310, and that the indictment charging appellant with a violation thereof alleges a cognizable offense.

The recently decided case of *Moore v. State*, 388 Md. 623, 882 A.2d 256 (2005), involving a charge of common law attempt to commit a sexual offense in the third degree, is not in conflict with our conclusion that Maxwell was properly charged with, and convicted of, attempted second degree rape. In *Moore*, the indictment charged, *inter alia*, that Moore did "unlawfully attempt to commit a sexual offense in the third degree upon a fourteen-year-old minor," *id.* at 627, 882 A.2d 256, in violation of CL § 3–307(a)(4) and (5).[5] Moore had used an internet chat room to attempt to contact a minor. Under the agreed statement of facts in the case, however, Moore was at all times communicating with an adult police officer who was posing as a 14–year–old girl. Using the internet for communication, Moore told the police officer that he wanted to engage in oral sex with her and her 14–year–old friend. Moore arranged to meet the purported minors in Frederick. At the appointed hour, Moore showed up, and he was arrested by members of the Maryland State Internet Crimes Against Children Taskforce. In a statement to arresting officers,

---

**5.** CL § 3–307 defines sexual offenses in the third degree. Under CL § 3–307(a)(4), a person may not engage in a "sexual act," as defined in CL § 3–301(e), with another "if the victim is 14 or 15 years old, and the person performing the act is at least 21 years old." Similarly, under CL § 3–307(a)(5), a person may not engage in "vaginal intercourse," as defined in CL § 3–301(g), with another "if the victim is 14 or 15 years old, and the person performing the act is at least 21 years old."

Maxwell has not appealed his conviction for a third degree sexual offense as defined in CL § 3–307(a)(3), which provides: "A person may not . . . engage in sexual contact with another if the victim is under the age of 14 years, and the person performing the sexual contact is at least 4 years older than the victim[.]" SG's testimony clearly supported a finding that Maxwell had engaged in "sexual contact," which is defined in CL § 3–301(f)(1) to include "an intentional touching of the victim's or actor's genital, anal, or other intimate area for sexual arousal or gratification. . . ."

Moore admitted that he drove from Reston, Virginia, to Frederick, Maryland, with an intent to meet two 14–year–old minors and engage in oral and vaginal sex with both girls. Moore was convicted of attempted third degree sexual offense.

Moore appealed his convictions to this Court, but the Court of Appeals issued a writ of certiorari prior to disposition of Moore's appeal in this Court. The Court of Appeals framed the question before it quite narrowly, stating, 388 Md. at 626, 882 A.2d 256:

The ... question presented in this case is whether the crime of attempted third degree sexual offense, predicated upon either § 3–307(a)(4) or § 3–307(a)(5), covers the situation where the defendant, who is over 21 years of age, contacts and arranges to meet another person for a sexual act or vaginal intercourse, where the defendant travels to the arranged meeting place, where the defendant believes that the other person is 14 years old, but where the other person is actually an adult undercover police officer.

The Court summarized the State's argument in *Moore* as follows:

[B]ecause Moore's purpose or intent was "to engage in unlawful sexual conduct with a minor," and because, according to the State, he "took a substantial step towards commission of the crime, he can be convicted of attempt, even if the person he thought was a minor was an undercover adult police officer."

*Moore,* 388 Md. at 643, 882 A.2d 256.

The Court of Appeals disagreed, pointing out that because there was no 14–year–old involved in Moore's case, there could be no third degree sexual offense even if Moore had followed his intent through to a conclusion, and if there could be no consummated third degree sexual offense, there could be no attempted third degree sexual offense under the agreed facts presented in the case. The Court stated, *id.* at 643–44, 882 A.2d 256:

Preliminarily, it is questionable whether count two of the indictment [the charge of attempted third degree sexual

offense] even covered the State's theory of the case. Count two flatly charged that the defendant, in Frederick County, "did unlawfully attempt to commit a sexual offense in the third degree *upon a fourteen year old minor*." (Emphasis added). Under the agreed statement of facts, there was no evidence of a fourteen-year-old minor present at the location in Frederick County or even a fourteen year old ever involved in the case. The language of count two may simply not cover an adult or fictitious person believed by the defendant to be a minor.

Nevertheless, assuming *arguendo* that count two is sufficient to embrace the State's theory, we agree with the defendant that the crime of an attempted third degree sexual offense under the common law and under § 3–307(a)(4) and (5), does not cover the situation presented by this case. In reaching our decision, however, we need not and shall not decide some of the issues raised by the defendant. Specifically, we shall not reach either the defendant's argument that there was no "substantial step that goes beyond preparation" or his argument based on "legal impossibility."

The Court reviewed Maryland cases that have addressed strict criminal liability in the context of sexual offenses where there was no mens rea element with respect to the victim's age. The Court further elaborated on the nature of the crime of common law attempt in Maryland, quoting from *Lane*, in which Judge Wilner stated:

"By Maryland common law, the attempt to commit a crime is, itself, a separate crime—a misdemeanor. As we pointed out in *Cox v. State*, 311 Md. 326, 330–31, 534 A.2d 1333, 1335 (1988), attempt 'is an adjunct crime, it cannot exist by itself, but only in connection with another crime,' and it thus 'expands and contracts and is redefined commensurately with the substantive offense.' *See also Hardy v. State*, 301 Md. 124, 482 A.2d 474 (1984). Subject to some exceptions, common law attempt has been held applicable to common law crimes and to a number of statutory offenses. *Bruce v. State*, 317 Md. 642, 645, 566 A.2d 103, 104 (1989).

*There are, however, at least two categories of substantive crimes, to which criminal attempt has been held inapplicable. The first consists of crimes that do not require at least a general criminal intent. Cox v. State, supra,* 311 Md. at 331, 534 A.2d at 1335: 'There is an exception, however, to the general rule that attempt applies to all offenses. *Crimes that do not involve intent to do a criminal act generally fall outside the scope of the crime of attempt.* If there is no intent to do a wrongful act, then usually there is no crime of attempt.' The second category consists of substantive crimes that are, themselves, in the nature of attempts. Simple assault is often cited as an example. Although we need not decide the matter here, there may be other crimes as well that may not be suitable for serving as the basis of a criminal attempt."

*Moore,* 388 Md. at 644–45, 882 A.2d 256 (quoting *Lane, supra,* 348 Md. at 283–84, 703 A.2d 180) (footnote omitted) (emphasis added in *Moore* ).

With respect to the charge of attempted third degree sexual offense brought against Moore, the Court concluded, 388 Md. at 645–46, 882 A.2d 256:

Since the offense under § 3–307(a)(4) and (5) has no intent element or *mens rea* element with regard to the "victim's" age, it follows that, absent a change in the statute, there can be no crime of attempt such as charged in the present indictment. The fact that the defendant in the case actually had an intent to engage in sexual activity with a fourteen year old person does not in itself create a crime where there is no such crime of attempted third degree sexual offense under the present statutory scheme and common law principles.

The Court did not hold that there could be no conviction for attempted third degree sexual offense under other circumstances involving an actual 14–year–old. But in Moore's situation, because there was no 14–year–old ever actually involved, Moore could not have committed the crime of third degree sexual offense under CL § 3–307(a)(4) or (5), and consequent-

ly, there could be no liability for a lesser included common law attempt. Further, as the Court of Appeals pointed out, there was no statutory provision that criminalized Moore's actions taken in the mistaken belief that he was dealing with a 14–year–old. Because the would-be victim was an adult, Moore could not be convicted of either a third degree sexual offense under CL § 3–307(a)(4) or (5), or an attempt to commit such offense.

In contrast to the facts in *Moore,* Maxwell was indeed dealing with a 13–year–old minor, and if Maxwell had completed the act of vaginal intercourse with SG, such conduct would have constituted the rime of rape in the second degree under CL § 3–304(a)(3). Accordingly, attempt could be a lesser included offense in Maxwell's case.

Moreover, the Maryland legislature *has* made attempted second degree rape a crime under the present statutory scheme, specifically, in CL § 3–310, and Maxwell was indicted for violating that statutory offense. As the Court of Appeals observed in *Owens, supra,* 352 Md. at 674, 724 A.2d 43, "Absent any constitutional prohibition, it is within the 'legislative power to define crimes and to fix their punishment.' *Scarlett v. State,* 201 Md. 310, 320, 93 A.2d 753, 757 (1953), *cert. denied,* 345 U.S. 955, 73 S.Ct. 937, 97 L.Ed. 1377 (1953)."

In *Owens,* 352 Md. at 681, 724 A.2d 43, the Court of Appeals noted that the State's compelling interest in promoting the physical and mental health of children supports statutes that criminalize sex with minors. The Court described the great potential harm to minors who are victims of adult sexual predators, *id.* at 681–83, 724 A.2d 43 (footnotes omitted):

The case law testing the constitutionality of strict liability statutory rape laws is unanimous in recognizing the significance of the potential harm caused by sexual activity involving children, even with their consent. These risks involve potential physical harm, including the risk of venereal diseases, especially the HIV virus, trauma, and even permanent damage to a child's organs . . . .

\* \* \*

Perhaps most significantly, an adult who engages in sexual activity with a child may cause the child serious psychological damage, regardless of the child's maturity or lack of chastity. Since the adult will almost always be more physically mature and experienced in sexual matters, the risk of sexual exploitation is significant. Moreover, the effects on children of sexual exploitation often follow the child into adulthood, with societal consequences as well.[6]

In light of the clear societal interest in protecting children from sexual predators, the Court of Appeals opined in *Owens*, 352 Md. at 683, 724 A.2d 43: "The state's overwhelming interest in protecting children from these risks outweighs any interest that the individual may have in engaging in sexual relations with children near the age of consent." As the Court noted in *Owens*, 352 Md. at 681, 724 A.2d 43, "Legislators generally have broader discretion in enacting laws to promote

---

**6.** The Court in *Owens*, 352 Md. at 683, 724 A.2d 43, further quoted the following passage from an opinion of the New Jersey Supreme Court that similarly took note of the detrimental impact of sexual abuse of children:

"Sexual assault takes a heavy toll on its victims, particularly on children. Recent research indicates that a number of psychosocial problems-including chronic depression and anxiety, isolation and poor social adjustment, substance abuse, suicidal behavior, and involvement in physically or sexually abusive relationships as either aggressor or victim-are more common among adults molested as children than among those with no such childhood experiences. Victims of sexual abuse can suffer an impaired ability to critically evaluate the motives and behavior of others, making them more vulnerable to revictimization. An especially disturbing finding about child sexual abuse is its strong intergenerational pattern; in particular, due to the psychological impact of their own abuse, sexually abused boys have been found to be more likely than non-abused boys to turn into offenders against the next generation of children, and sexually abused girls are more likely to become mothers of children who are abused. And studies show that adult male aggressive behavior, particularly sexual aggression, is associated with the trauma of childhood sexual abuse. Thus, apart from the substantial personal trauma caused to the victims of such crimes, sexual crimes against children exact heavy social costs as well."

*Doe v. Poritz*, 142 N.J. 1, 662 A.2d 367, 375 (1995)(quoting Brief for the United States at 5–8 (citations omitted)).

the health and welfare of children than they have for adults."
Indeed, the Court noted, *id.*, " 'The prevention of sexual
exploitation and abuse of children constitutes a government
objective of surpassing importance.' " (Quoting *New York v.
Ferber*, 458 U.S. 747, 757, 102 S.Ct. 3348, 3355, 73 L.Ed.2d
1113, 1123 (1982)). Accordingly, we conclude it was within the
scope of the legislature's power to enact CL § 3–310, and we
reject Maxwell's assertion that the circuit court was without
jurisdiction to consider his indictment for that offense.[7]

### B. The trial court properly instructed the jury on the definition of attempted rape in the second degree.

Maxwell contends the trial judge erred in failing to grant
his request for a supplemental jury instruction regarding the
charge of attempted rape in the second degree. More specifi-
cally, Maxwell asserts:

> Relying on *Young v. State*, 303 Md. 298, 307, 493 A.2d 352
> (1985), defense counsel asked that the jury be instructed
> "that if the Defendant's conduct has not progressed beyond
> mere preparation, in other words, he has not performed the
> requisite overt act, then you must find the Defendant not
> guilty of attempted second degree rape." ... The trial
> judge denied that request.

Because we conclude the instructions regarding attempt that
were given by the trial court properly covered the definition of
the offense, we find no error in the court's failure to give the
requested instruction.

In *Janey v. State*, 166 Md.App. 645, 654, 891 A.2d 355, 360
(2006), we summarized the standards for reviewing whether
the trial court has erred in refusing to give a requested jury
instruction:

---

7. Although the Supreme Court, in *Lawrence v. Texas*, 539 U.S. 558, 572,
123 S.Ct. 2472, 2480, 156 L.Ed.2d 508, 521 (2003), recognized that
"liberty gives substantial protection to adult persons in deciding how to
conduct their private lives in matters pertaining to sex," we see nothing
in *Lawrence* that would apply to a statute properly drawn to protect
minors from adult sexual predators. Maxwell has not contended other-
wise.

The general rule regarding jury instructions is that the trial judge "has a duty, upon request in a criminal case, to instruct the jury on the applicable law." *Gunning v. State,* 347 Md. 332, 347 [701 A.2d 374] (1997). Maryland Rule 4-325(c) provides:

The court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding. . . . The court need not grant a requested instruction if the matter is fairly covered by instructions actually given.

In evaluating a trial court's refusal to charge a jury as requested, a reviewing court "must determine whether the requested instruction was a correct statement of the law; whether it was applicable under the facts of the case [*i.e.,* whether the evidence was sufficient to generate the desired instruction]; and whether it was fairly covered in the instructions actually given." *Gunning,* 347 Md. at 348 [701 A.2d 374] (quoting *Grandison v. State,* 341 Md. 175, 211 [670 A.2d 398] (1995), *cert. denied.,* 519 U.S. 1027 [117 S.Ct. 581, 136 L.Ed.2d 512] (1996)).

In *Young, supra,* 303 Md. at 309, 493 A.2d 352, the Court of Appeals commented: "What act will suffice to show that an attempt itself has reached the stage of a completed crime has persistently troubled the courts." The Court concluded that the "substantial step" test, as set forth in § 5.01 of the Model Penal Code, offers the best view on the issue, stating, *id.* at 311, 493 A.2d 352:

We believe that the preferable approach is one bottomed on the "substantial step" test as is that of Model Penal Code. We think that using a "substantial step" as the criterion in determining whether an overt act is more than mere preparation to commit a crime is clearer, sounder, more practical and easier to apply to the multitude of differing fact situations which may occur. Therefore, in formulating a test to fix the point in the development of events at which a person goes further than mere unindictable preparation and becomes guilty of attempt, we eliminate from consideration

the "Proximity Approach," the "Probable Desistance Approach" and the "Equivocality Approach."

 The supplemental instruction requested by Maxwell is not entirely consistent with the preference expressed by the Court of Appeals in the *Young* case because it fails to mention the "substantial step" criterion, which was the language used in the trial court's instructions in this case. But even if we were to assume, *arguendo,* that Maxwell's requested instruction is not inconsistent with the legal principles set forth in *Young,* because the trial court's instructions fairly covered the applicable law on this point, there was no error in the court's failure to give the precise language requested by Maxwell.

The trial court instructed the jury as follows after the presentation of all of the evidence:

> The defendant is charged with the crime of attempted second degree rape. Attempt is a substantial step beyond mere preparation, towards the commission of a crime. In order to convict the defendant of attempted second degree rape, the State must proof [sic], 1) that the defendant took a substantial accept [sic, presumably step] beyond mere preparation toward the commission of the crime of second degree rape, and 2) that the defendant intended to commit the crime of second degree rape, and 3) that the defendant had the apparent ability at that time to commit the crime of second degree rape.

> In addition, the State must prove 1) that the defendant attempted vaginal intercourse with [SG], 2) that [SG] was under 14 years old at the time of the act and 3) that the defendant is at least four years older than [SG]. Vaginal intercourse means the penetration of the penis into the vagina. The slightest penetration is sufficient, an emission of semen is not required. The intent required in this case as to Count 1 is not a generalized intent to commit second degree rape on [SG] on some future date, but it must be a specific intent by the defendant to commit the crime of second degree rape on January 1st, 2003 on [SG].

Intent is a state of mind and ordinarily cannot be proven directly because there is no way of looking into a person's mind; therefore, a defendant's intent may be shown by surrounding circumstances. In determining the defendant's intent, you may consider the defendant's act and statements as well as the surrounding circumstances. Further, you may but are not required to infer that a person ordinarily intends a natural and probable consequence of his act.

In our opinion, this instruction fairly covered the law that requires the State to prove that the defendant took a substantial step beyond mere preparation, and the trial judge did not err in refusing to add the specific instruction requested by Maxwell.[8]

## C. The evidence was sufficient to support the jury's conclusion that Maxwell took a substantial step beyond mere preparation toward the commission of vaginal intercourse with a 13–year–old girl.

Maxwell argues that the evidence was insufficient to establish beyond a reasonable doubt that his conduct constituted a substantial step beyond mere preparation for an act of intercourse. In essence, he contends that the only evidence that pointed toward vaginal intercourse was his mere possession of a condom, and that even with the evidence of that coincidence, there was no evidence to establish that he was making an attempt to engage in vaginal intercourse with SG. We disagree.

■ When we review a challenge to the sufficiency of the evidence in a jury trial, we must determine "whether, after

---

8. The pertinent Maryland Criminal Pattern Jury Instruction provides:
 MPJI–Cr 4:02: ATTEMPT
 The defendant is charged with the crime of attempted (*crime*). Attempt is a substantial step, beyond mere preparation, toward the commission of a crime. In order to convict the defendant of attempted (*crime*), the State must prove:
 (1) that the defendant took a substantial step, beyond mere preparation, toward the commission of the crime of (*crime*); and
 (2) that the defendant intended to commit the crime of (*crime*).

viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979) (emphasis in original). *Accord State v. Smith*, 374 Md. 527, 533, 823 A.2d 664 (2003); *Hudson v. State*, 152 Md.App. 488, 523, 832 A.2d 834, *cert. denied*, 378 Md. 618, 837 A.2d 928 (2003). When the evidence against Maxwell is viewed in a light most favorable to the prosecution, there was sufficient evidence from which a rational trier of fact could have concluded beyond a reasonable doubt that Maxwell took a substantial step toward the commission of vaginal intercourse with a 13–year–old girl, and that his conduct went beyond mere preparation.

In Maxwell's case, we need not determine the precise point in time that his conduct went beyond "mere preparation" and constituted a "substantial step" toward completing the act of vaginal intercourse. It is sufficient for our purpose to state that the jury could have rationally concluded from the evidence that Maxwell's conduct met that standard.

■ The jury was entitled to give credit to the testimony from SG that supported the conclusion that it was Maxwell's intent from the beginning of the encounter to engage in vaginal intercourse with SG. On cross-examination, SG testified as follows:

Q [by Defense Counsel] And, you didn't say anything about intercourse [when SG described the events at the hospital] because none of that actually happened. Nobody tried any intercourse, that was in your mind, isn't it?

A [by SG] He got out a condom and he was wanting to have sex.

Q Well, I understand you think what's [sic] in his mind, he wanted to have sex. He didn't say, we're going to have sexual intercourse now, did he?

A Yes, he did.

Q Oh, he told you, you were to have sexual intercourse, right?

A Yes.

\* \* \*

Q You're just, making this assumption because of the condom in the car, just like I pulled one out of my pocket, right?

A Well, yeah, and he talked about it on the Internet and on the phone.

Q Oh, so wait a second. So, you do remember the Internet now? You remember talking about having intercourse on the Internet? Is this starting to refresh your recollection maybe?

A Kind of yeah.

\* \* \*

He said something and then I said would you use condoms. And, he said condoms aren't my style. And, I said I want a condom.

With that background, given all that transpired in the parked car up through the point when both Maxwell and SG had exposed their genitals and Maxwell pulled out a condom, the jury could have rationally concluded that Maxwell intended to have vaginal intercourse with SG, and that he took a substantial step toward completion of that intended act. Accordingly, the evidence was sufficient to support the conviction for attempted rape in the second degree in violation of CL § 3–310.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**