STATE OF NORTH CAROLINA
v.
JAMES EARL EWELL, Defendant.
No. COA06-1494
Court of Appeals of North Carolina.
Filed November 6, 2007
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Q. Shanté Martin, for the State.
Glenn Gerding for defendant-appellant.
GEER, Judge.
Defendant James Earl Ewell appeals from his convictions for attempted first degree sex offense of a child under 13 years of age, attempted statutory sex offense of a 13-year-old child, and two counts of indecent liberties with a child. In arguing on appeal that the trial court erred in denying his motion to dismiss, defendant relies primarily on his contention that the child lacked credibility. Since questions of credibility are for the jury, and the record contains sufficient evidence to prove the other elements of the crimes charged, we hold the trial court properly denied the motion to dismiss. Further, in light of defendant's extensive criminal record that became admissible when he testified, we find unpersuasive defendant's contention that the court committed plain error in allowing the State (1) to question defendant about convictions more than 10 years old and (2) to attempt to elicit facts underlying certain convictions. Finally, we disagree with defendant's contention that the trial court, in this second trial following a remand by this Court, imposed a sentence that exceeded the sentence imposed at the first trial. Accordingly, we hold that defendant received a trial free of prejudicial error.

Facts
The State's evidence at trial tended to show the following facts. At the time of the incidents at issue, defendant was living with his girlfriend and her daughter, "Tanya."[1] Tanya ranged in age from 11 to 13 during the time frame of the alleged offenses.
The first incident recalled by Tanya occurred on approximately 27 January 2001, when Tanya was 11 years old. Tanya's mother went to work early that day. According to Tanya, defendant intercepted her on her way to the bathroom and told her to use the bathroom in her mother's room. Before she reached the bathroom, defendant told her to lie down on the bed in her mother's room. When Tanya did not comply, he placed her on the bed, removed her pajamas and underwear, and began to have sexual intercourse with her. Tanya cried and asked him to stop, but defendant told her to stop moving and ejaculated on her stomach. Tanya testified defendant had sex with her more than 13 times between January 2001 and October 2002. She could not remember other specific dates, but did recall the circumstances surrounding some of the incidents.
Tanya testified defendant also tried to have oral sex with her on multiple occasions after the January 2001 incident. According to Tanya, defendant "would put his penis in any [sic] face" and "kept pushing my head, pulling my head back, and he would push it forward." During these incidents, Tanya noticed defendant had "moles" on his penis. Tanya's mother confirmed that defendant in fact had warts on his penis and testified further that the wart on the tip of his penis was only visible when the penis was erect. The State offered medical evidence that defendant had venereal warts removed on 7 April 2003, and defendant admitted he had the warts for five years.
On 9 September 2002, Tanya was diagnosed with Trichomonas, a sexually transmitted disease. Following that diagnosis, she admitted to her mother she had been sexually involved with defendant. Tanya's mother had also suffered from Trichomonas in 2000 or 2001 and believed defendant had transmitted it to her. Dr. Kathleen Previll, a pediatrician who examined Tanya on 5 February 2003, testified that Trichomonas is highly consistent with sexual intercourse and that there is only a slight possibility of its being transmitted through other types of contact.
Tanya's mother took Tanya to the Sheriff's Department on 15 November 2002 to report the allegations against defendant. On 2 December 2002, however, Tanya recanted. She later testified that her mother asked her to recant and promised she would not allow defendant to live with them again. Seven days later, on 9 December 2002, Tanya again changed her statement, stating that her first statement was true and her recantation was false.
In October or November 2002, Tanya reported to Warren Webster, a school counselor, that defendant had "mess[ed] with" her. She returned to Mr. Webster in January 2003 when she became upset because she thought defendant was moving back in with her mother. Tanya also reported defendant's activities to Nancy Bullock Conner, a social worker, and Suzanne Jolissaint from the Tedi Bear Clinic. Although the results of Tanya's physical examination with Dr. Previll were normal, Dr. Previll testified that normal findings were not inconsistent with allegations of abuse.
On 23 June 2003, defendant was indicted for first degree statutory rape; statutory rape of a person 13, 14, or 15; attempted first degree sex offense; attempted statutory sex offense; indecent liberties with a child under 13; and indecent liberties with a child who was 13. After the initial trial, in which defendant was convicted of each charge, defendant appealed, and a new trial was ordered as a result of the admission of improper expert testimony. See State v. Ewell, 168 N.C. App. 98, 606 S.E.2d 914, disc. review denied, 359 N.C. 412, 612 S.E.2d 326 (2005). At the second trial, defendant denied ever being sexually involved with Tanya. He testified Tanya could have known of his warts because she walked into the bathroom on occasion when he was urinating or saw him exiting the shower. Defendant also denied having Trichomonas. The jury found defendant guilty of attempted first degree sex offense, attempted statutory sex offense, and two counts of indecent liberties. The jury acquitted defendant of first degree statutory rape and statutory rape of a person 13 years of age. The trial court imposed four consecutive sentences: 25 to 30 months for each indecent liberties conviction and 225 to 279 months for each attempted sex offense conviction.

I
Defendant first argues that the trial court improperly denied his motion to dismiss for insufficiency of the evidence. When considering a motion to dismiss, the trial court must determine whether the State presented substantial evidence of each element of the crime and of the defendant's being the perpetrator. State v. Robinson, 355 N.C. 320, 336, 561 S.E.2d 245, 255, cert. denied, 537 U.S. 1006, 154 L. Ed. 2d 404, 123 S. Ct. 488 (2002). "'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" State v. Matias, 354 N.C. 549, 552, 556 S.E.2d 269, 270 (2001) (quoting State v. Brown, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984)). The evidence must be viewed "in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." State v. Rose, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), cert denied, 515 U.S. 1135, 132 L. Ed. 2d 818, 115 S. Ct. 2565 (1995).
With respect to the charges of attempted first degree sex offense and attempted statutory sex offense, defendant argues that the State presented insufficient evidence of an overt act or a specific intent to commit the crime. The elements of attempted sex offense include: "(1) an intent to commit the crime, (2) an overt act done for that purpose, going beyond mere preparation, (3) but falling short of the completed offense." State v. Collins, 334 N.C. 54, 60, 431 S.E.2d 188, 192 (1993).
Defendant contends that, at most, the State presented evidence that he requested that Tanya perform fellatio on him and that a request is insufficient to constitute the required overt act. This Court rejected an identical argument in State v. Henderson, ___ N.C. App. ___, 642 S.E.2d 509 (2007). As described by the Court, the evidence in that case "tended to show that defendant removed his pants, walked into the room where his seven-or eight-year-old daughter was seated, stood in front of her, and asked her to put his penis in her mouth." Id. at ___, 642 S.E.2d at 513. This Court described as "legally incorrect" the defendant's argument that a mere request, in the absence of evidence of accompanying assaultive or violent behavior, was insufficient to constitute an attempt. Id. at ___, 642 S.E.2d at 514. While the Court acknowledged in Henderson that the defendant had previously threatened the child and physically abused her stepmother, it stressed that "violence is not a necessary component of an overt act, even in the context of attempted sexual offenses." Id.
In this case, Tanya testified that when she was between the ages of 11 and 13, defendant tried on multiple occasions to make her perform fellatio by standing in front of Tanya with his penisclose to her face and using his hands to move her face towards his penis. Based on Henderson, there can be no question that this evidence was sufficient to meet the requirement of an overt act necessary to support the charges of attempted first degree sex offense and attempted statutory sex offense.
Defendant also argues that the State failed to prove that he had the specific intent to have her perform fellatio. "An act must be done with specific intent to commit the underlying crime before a defendant may be convicted of an attempted crime." State v. Sines, 158 N.C. App. 79, 85, 579 S.E.2d 895, 899, cert. denied, 357 N.C. 468, 587 S.E.2d 69 (2003). We hold that evidence of defendant's erect penis placed in close proximity to the child's face and attempts to move the child's head toward the penis is ample evidence of a specific intent to perform the charged sexual offenses. See id. at 86, 579 S.E.2d at 900 (holding that sufficient evidence of intent for attempted statutory sexual offense existed when defendant took child to secluded place and demanded she perform fellatio).
In addition, with respect to all of the charges  including the attempted sexual offense charges and the indecent liberties charges  defendant argues that because Tanya lacked credibility, her testimony cannot constitute substantial evidence for purposes of the motion to dismiss. Defendant, without citing any authority, points to the rape acquittal and argues that if the jury did not believe Tanya's testimony regarding sexual intercourse, they were required also to reject the remainder of her testimony. Defendant also notes inconsistencies in Tanya's prior statements.
"It is . . . well-settled that the testimony of a single witness is adequate to withstand a motion to dismiss when that witness has testified as to all the required elements of the crimes at issue." State v. Whitman, 179 N.C. App. 657, 670, 635 S.E.2d 906, 914 (2006). Any issues relating to Tanya's credibility  such as those urged on appeal  were for the jury to decide. State v. Begley, 72 N.C. App. 37, 43, 323 S.E.2d 56, 60 (1984). We note that based on Tanya's knowledge of the warts on defendant's penis (apparent only when defendant's uncircumcised penis was erect), the jury could reasonably have decided that while no intercourse occurred, defendant still attempted a sexual offense and committed indecent liberties. The jury was equally entitled to reject defendant's proffered innocent explanations for Tanya's knowledge. We, therefore, conclude that the trial court did not err in denying defendant's motion to dismiss.

II
Defendant next contends the trial court committed plain error when it allowed the State to question him on cross-examination about convictions more than 10 years old. Although a defendant's credibility may be impeached during cross-examination by evidence of prior convictions, N.C.R. Evid. 609(a), evidence of convictions more than 10 years old are inadmissible "unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect," N.C.R. Evid. 609(b).
Before the trial began, the prosecutor gave notice of his intent to offer convictions more than 10 years old in the event the defendant chose to testify. The trial court asked defense counsel whether he wanted the court to address the issue at that time:
THE COURT: . . . Do you feel the need  that I can rule on that motion at this time, or do you want me to  would it be appropriate just to wait and deal with that should the issue come forward?
[DEFENSE COUNSEL]: I think that would be appropriate. Let's see if it's going to become an issue. It may or [sic] not become an issue.
. . . .
THE COURT: All right, then, I'm just going to hold that in abeyance based on your agreement until you let me know that you feel a need that it needs to be ruled on.
[DEFENSE COUNSEL]: Yes, sir.
Subsequently, defendant chose to testify and, during cross-examination, the State proceeded to ask questions about defendant's criminal record, including the convictions occurring more than 10 years earlier. Defendant did not assert any objection to those questions. On appeal, defendant acknowledges this lack of objection, but argues both plain error and ineffective assistance of counsel.
Plain error is "'fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done . . . .'" State v. Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting United States v. McCaskill, 676 F.2d 995, 1002 (4th Cir.), cert. denied, 459 U.S. 1018, 74 L. Ed. 2d 513, 103 S. Ct. 381 (1982)). "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." State v. Jordan, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).
Even assuming, arguendo, that admission of the older convictions was error, defendant has failed to demonstrate that the jury would probably have reached a different result in the absence of those convictions. The State properly established on cross-examination that defendant was convicted within the past 10 years of: (1) two counts of assault on a female, (2) making a false report to police, (3) injury to personal property, (4) injury to real property, and (5) two counts of breaking and entering. The convictions more than 10 years old included: providing false information to the Employment Security Commission and four counts of assault on a female. Given defendant's substantial recent criminal history  involving relatively recent deceitfulness and violence towards women  we do not believe that elimination of the older convictions would have caused the jury to change its view of defendant's credibility so substantially as to result in a not-guilty verdict. See State v. Hensley, 77 N.C. App. 192, 196, 334 S.E.2d 783, 785 (1985) (no reversible error when defendant was properly impeached by seven other convictions before his 13-year-old conviction was improperly introduced since the inclusion "could not have appreciably worsened the jury's view of his credibility"), disc. review denied, 315 N.C. 393, 338 S.E.2d 882 (1986).
Defendant also contends that the court's failure to make specific findings under Rule 609 that the probative value of the older convictions outweighed the prejudicial effect of the convictions' admission constitutes plain error. Defendant cites no authority suggesting that a trial court is obligated to make findings of fact when a defendant has failed to object to the admission of evidence. Regardless, "even if the trial judge's findings on a challenge to the admissibility of prior conviction evidence are found to be inadequate under Rule 609(b), Defendant would be entitled to a new trial only if the admission of such evidence unfairly prejudiced his defense." State v. Shelly, 176 N.C. App. 575, 584, 627 S.E.2d 287, 295 (2006). Defendant has, however, failed to demonstrate the prejudice necessary for plain error.
Finally, defendant also argues that the State's questions regarding the facts underlying certain convictions constituted plain error. Specifically, defendant points to questions by the State during defendant's cross-examination "about the facts underlying his conviction for providing false information to the Employment Security Commission; the facts underlying his assault on a female conviction; and the facts underlying the breaking and entering and injury to property convictions." According to defendant, the facts underlying the convictions were inadmissible under Rule 609 and under Rule 404(b).
In State v. Lynch, 334 N.C. 402, 409, 432 S.E.2d 349, 352 (1993), our Supreme Court held that even if prior convictions are admissible under Rule 609, the State's inquiry is limited to "the name of the crime, the time and place of the conviction, and the punishment imposed." It is also well established, however, that evidence inadmissible under Rule 609 may still be admissible under Rule 404(b). See, e.g., State v. Wilkerson, 148 N.C. App. 310, 323, 559 S.E.2d 5, 13 (Wynn, J., dissenting) ("[E]vidence eliciting details of acts that formed the basis of prior convictions may be elicited under Rule 404(b) even though such evidence may be barred under Rule 609."), adopted per curiam, 356 N.C. 418, 571 S.E.2d 583 (2002); State v. Barnett, 141 N.C. App. 378, 389, 540 S.E.2d 423, 430 (2000) ("[T]hat the evidence could not be admitted pursuant to Rule 609(a) does not preclude its admission under [Rule 404(b)]."), aff'd per curiam, 354 N.C. 350, 554 S.E.2d 644 (2001).
Here, defendant first points to the State's questions relating to whether defendant would lie to obtain a "benefit." Defendant initially responded, "[N]othing but unemployment, if that's what you're referring to." In reply to the State's follow-up question that he explain "about the untruths you told to the folks at the Unemployment [sic] Security Commission," defendant admitted he had continued to accept unemployment checks while in fact working. When asked if he had ever "told an untruth to the law," defendant responded "only making false report, if that's what you're trying to say." When asked about the details of the false report, defendant responded, "I don't exactly remember what it was about, but when I was arrested, the truth came out. I didn't deny it."
With respect to the false report to the police, defendant could not provide the facts underlying the conviction. He could only say "I think" it had something to do "with some boys supposedly having a gas can in Robersonville[.]" We do not see how these rather vague "facts" could be more prejudicial than the conviction for making a false report to the police, which was properly admitted under Rule 609.
We agree that the State should not have been allowed to elicit the facts underlying the conviction for a false statement to the Employment Security Commission. Those facts relate only to defendant's credibility and, therefore, cannot be admitted under Rule 404(b) independently of Rule 609. See State v. Cook, 165 N.C. App. 630, 637-38, 599 S.E.2d 67, 72 (2004) (holding that facts underlying conviction offered only to impeach defendant's credibility could not be admitted under Rule 404(b) when they were inadmissible under Rule 609). Nevertheless, defendant has failed to demonstrate that admission of those facts tipped the scales with respect to the jury's verdict. See State v. Holbrook, 137 N.C. App. 766, 769, 529 S.E.2d 510, 512 (2000) (holding that plain error may not be applied "on a cumulative basis," but rather defendant must show that each individual error rises to the level of plain error). Defendant next argues that the following questions regarding his assault on a female convictions were impermissible:
Q. Would it be fair to say, Mr. Ewell, that you really don't have much respect for women?
A. I have plenty of respect for women.
Q. You do?
A. Yes, I do.
Q. What about Tina Peele?
A. What about Tina Peele? That was a relationship that I had lots of trouble with it. Drugs and a lot of stuff was involved in that.
Q: How many times have you been convicted of Assault on a Female?
A: I don't recall exactly how many, but most of them was with Ms. Peele, and it's something that happened because I was a working man in the house, and, by the time I would come home, she had done spent all of the money that I worked for in drugs.
Q: So six would be an accurate number?
A: Hey, I don't know. I don't know how many times I was charged with it, but I know  but, as far as assault on a female, that's it. I never had any sexual charge.
The transcript reveals that the State did not specifically attempt to elicit the facts underlying the assault convictions. Instead, it sought only to establish the number of convictions. Defendant volunteered the information regarding why he had apparently assaulted Ms. Peele. That testimony cannot establish a basis for reversible error. See N.C. Gen. Stat. § 15A-1443(c) (2005) ("A defendant is not prejudiced . . . by error resulting from his own conduct."). Lastly, defendant points to "[t]he State badger[ing] Defendant about the facts relat[ing] to the breaking and entering and injury to property convictions, asking Defendant whether he cut [Tanya's mother's] phone lines and repeatedly asking whether he started a fire under her trailer." Defendant denied that the breaking and entering and injury to property charges related to the setting of a fire under Tanya's mother's trailer. He explained that the breaking and entering was the result of his returning to the house to remove his belongings in 2001, and he "got caught" hiding in the bedroom under the bed. He admitted that three weeks earlier he threw a cigarette on the ground near the house, but he did not know whether the cigarette caught fire on trash under the house. With respect to the phone lines, the State asked:
Q. . . . Would you ever do anything to interfere with [Tanya's mother's] getting a hold of the Martin County Sheriff's Office because something was going on between the two of you?
A. I never stopped [her] from coming to the Sheriff's Department. I never, I never even told her not to go to the Sheriff's Department.
Q. Well, didn't you cut her phone lines a couple of times?
A. No.
Q. You didn't do that?
A. No.
Q. As a matter of fact, on December the 7th 
A. I was accused of cutting her phone lines. But, as far as being charged with cutting her phone lines, no, I was not.
He testified that the convictions occurred while his relationship with the mother was not going smoothly.
The critical question raised by this testimony is whether it was admissible under Rule 404(b). Rule 404(b) of the North Carolina Rules of Evidence provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.
Our Supreme Court has held that this rule is "a clear general rule of inclusion of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but one exception requiring its exclusion if its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." State v. Coffey, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990).
Applying these principles, our Supreme Court has stated that "[e]vidence of other crimes committed by a defendant may be admissible under Rule 404(b) if it establishes the chain of circumstances or context of the charged crime. Such evidence is admissible if the evidence of other crimes serves to enhance the natural development of the facts or is necessary to complete the story of the charged crime for the jury." State v. White, 340 N.C. 264, 284, 457 S.E.2d 841, 853 (internal citations omitted), cert. denied, 516 U.S. 994, 133 L. Ed. 2d 436, 116 S. Ct. 530 (1995). The Court has explained further: "Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or [if it] forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury."
State v. Agee, 326 N.C. 542, 548, 391 S.E.2d 171, 174 (1990) (quoting United States v. Williford, 764 F.2d 1493, 1499 (11th Cir. 1985)).
In this case, the questions regarding defendant's breaking and entering into Tanya's mother's trailer, potentially setting a fire under the house, and cutting the telephone lines were part of the context of the charged sex crimes alleged to have been committed by defendant on Tanya. As the State attempted to establish through its questions, the breaking and entering, property damage, and fire occurred during the same time frame Tanya testified that the sexual intercourse had begun. Defendant admitted at this time that his relationship with Tanya's mother was not going smoothly. The State pointed to the severed telephone lines as evidence of defendant's attempting to block contact with the Sheriff's Department.
These questions, therefore, went to defendant's motive and the context of the events  a rocky relationship with Tanya's mother  as well as to why Tanya would not have earlier reported the conduct. As such, they were not prohibited by Rule 404(b). See, e.g., State v. Thompson, 139 N.C. App. 299, 305, 533 S.E.2d 834, 839 (2000) ("In sex abuse cases, the victim's state of mind can be relevant. When it is relevant, any evidence tending to show the victim is afraid of her abuser, or evidence explaining why the victim never reported the sexual incidents to anyone, is admissible." (internal citation omitted)); State v. Jenkins, 115 N.C. App. 520, 527, 445 S.E.2d 622, 626 (evidence that one month prior to charged rape, defendant failed to return rape victim's car, stole some money, broke into victim's home, and was arrested was admissible under Rule 404(b) as part of history of event), disc. review denied, 337 N.C. 804, 449 S.E.2d 752 (1994).
Alternatively, defendant argues that he received ineffective assistance of counsel in violation of the Sixth Amendment of the United States Constitution when his counsel failed to object to the introduction of his criminal convictions that were more than 10 years old and to the State's questions regarding the facts underlying certain convictions. Ineffective assistance of counsel claims "brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required . . . ." State v. Fair, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001), cert. denied, 535 U.S. 1114, 153 L. Ed. 2d 162, 122 S. Ct. 2332 (2002). Recently, however, the United States Supreme Court has held that ineffective assistance of counsel claims should rarely be raised on direct appeal because
[i]f the alleged error is one of commission, the record may reflect the action taken by counsel but not the reasons for it. The appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse.
Massaro v. United States, 538 U.S. 500, 505, 155 L. Ed. 2d 714, 720, 123 S. Ct. 1690, 1694 (2003). As Massaro observes, we cannot determine from the cold record if counsel had an explanation or a strategy for not objecting in this case. His remarks to the judge about waiting to see how the trial proceeded suggests there may have been a strategy. Therefore, we conclude the ineffective assistance of counsel claim cannot be decided on the existing record, and we dismiss this appeal without prejudice to defendant's right to reassert such claims in a motion for appropriate relief.

III
Defendant's final assignment of error asserts that the trial court erred in imposing a greater sentence on remand than it did in the original trial. N.C. Gen. Stat. § 15A-1335 (2005) provides:
When a conviction or sentence imposed in superior court has been set aside on direct review or collateral attack, the court may not impose a new sentence for the same offense, or for a different offense based on the same conduct, which is more severe than the prior sentence less the portion of the prior sentence previously served.
"Nevertheless, while that statute `prohibits trial courts from imposing stiffer sentences upon remand than originally imposed, nothing prohibits the trial court from changing the way in which it consolidated convictions during a sentencing hearing prior to remand.'" State v. Moffitt, ___ N.C. App. ___, ___, 648 S.E.2d 272, 274 (2007) (quoting State v. Ransom, 80 N.C. App. 711, 713, 343 S.E.2d 232, 234, cert. denied, 317 N.C. 712, 347 S.E.2d 450 (1986)). In State v. Oliver, 155 N.C. App. 209, 211, 573 S.E.2d 257, 258 (2002), appeal dismissed and disc. review denied, 357 N.C. 254, 583 S.E.2d 45 (2003), this Court similarly held: "N.C.G.S. § 15A-1335 does not prohibit the trial court's replacement of concurrent sentences with consecutive sentences upon resentencing, provided neither the individual sentences, nor the aggregate sentence, exceeds that imposed at the original sentencing hearing."
In Moffitt, the defendant was initially sentenced to a term of 34 to 50 months imprisonment on a conspiracy charge, followed by a consecutive term of 145 to 183 months imprisonment on consolidated charges of two counts of first degree kidnapping, two counts of robbery with a dangerous weapon, and felony breaking and/or entering. ___ N.C. App. at ___, 648 S.E.2d at 274. On remand from this Court, the trial court consolidated the charges differently, sentencing the defendant to 70 to 93 months imprisonment on the two counts of first degree kidnapping and to a consecutive term of 61 to 83 months imprisonment for the conspiracy charge, the felony breaking and/or entering charge, and the two counts of robbery with a dangerous weapon. Id. After noting that the aggregated sentence on remand was shorter than the aggregated sentence prior to appeal, this Court held that "[d]efendant did not receive a more severe sentence on remand and has failed to show any error in the trial court's decision to consolidate the charges differently for resentencing. Accordingly, this assignment of error is overruled." Id. at ___, 648 S.E.2d at 275.
In this case, following the first trial, the trial court entered four judgments: (1) a judgment for attempted first degree sex offense imposing a sentence of 225 to 279 months; (2) a judgment for attempted first degree statutory sex offense imposing a concurrent sentence of 225 to 279 months; (3) a judgment consolidating the convictions of first degree rape and one count of indecent liberties and imposing a concurrent sentence of 339 to 416 months for the consolidated judgment; and (4) a judgment consolidating the charges of statutory rape and the second count of indecent liberties imposing a sentence of 339 to 416 months to run consecutively to the sentence for first degree rape/indecent liberties. Following the second trial, the trial court again entered four judgments: (1) a judgment for attempted first degree sex offense of a child under 13 years old imposing a sentence of 225 to 279 months; (2) a judgment for one count of indecent liberties imposing a sentence of 25 to 30 months to run consecutively to the sentence for attempted first degree sex offense of a child under 13 years old; (3) a judgment for attempted first degree sex offense of a child who was 13 years old imposing a sentence of 225 to 279 months to run consecutively to the first indecent liberties sentence; and (4) a judgment for a second count of indecent liberties imposing a sentence of 25 to 30 months to run consecutively to the sentence for attempted first degree sex offense with a child who was 13 years old.
None of the sentences for the individual offenses exceeded the sentence for that offense imposed after the first trial. The only distinction is that defendant's concurrent terms of 225 to 279 months for the attempted sexual offenses were replaced with consecutive sentences of 225 to 279 months. Further, defendant's aggregate sentence on remand, 500 to 618 months, does not exceed his original aggregate sentence of 678 to 832 months. Since the trial court was permitted, under Moffitt and Oliver, to replace the concurrent sentences with consecutive sentences without violating N.C. Gen. Stat. § 15A-1335, we hold that defendant's sentences in this case do not violate § 15A-1335.
No Error.
Judges CALABRIA and JACKSON concur.
Report per Rule 30(e).
NOTES
[1] To protect the privacy of the child and for ease of reading, we will use the pseudonym "Tanya" throughout the opinion.