STATE OF NORTH CAROLINA v. ROBERT THOMAS SINES

No. COA02-741

(Filed 20 May 2003)

**1. Criminal Law— indictment for completed offense—conviction for attempt**

An indictment for a completed statutory sexual offense will support a conviction for the lesser crime of attempted statutory sexual offense.

---

**STATE v. SINES**

[158 N.C. App. 79 (2003)]

**2. Sexual Offenses— attempted statutory sexual offense— nature of intent**

The crime of attempted statutory sexual offense is valid under North Carolina law. The intent required for attempted statutory sexual offense requires only that defendant intended to commit a sexual act with the victim, not that defendant intended to commit a sexual act with an underage person.

**3. Indigent Defendants— funds for DNA expert—identity not in dispute—relevance**

The trial court did not abuse its discretion by refusing to give an attempted statutory sexual offense defendant funds to hire a DNA expert where defendant did not demonstrate the necessary particularized need. Neither defendant nor the State questioned the identity of the victim's attacker, and the presence or absence of defendant's DNA had no relevance to the offense.

Appeal by defendant from judgment entered 23 May 2001 by Judge W. Robert Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 24 March 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Lisa C. Glover, for the State.*

*Public Defender Isabel Scott Day, by Assistant Public Defenders Julie Ramseur Lewis and Dean Loven, for defendant-appellant.*

EAGLES, Chief Judge.

Defendant Robert Sines appeals from the judgment entered on a jury verdict finding him guilty of attempted statutory sexual offense. On appeal, defendant asserts that the trial court erred: (1) in denying defendant's motion to dismiss the charge of statutory sexual offense and in instructing the jury on attempted statutory sexual offense; (2) in refusing to allow the sealed juvenile records of the State's main witness into evidence for impeachment purposes; and (3) in denying defendant's motion for funds to hire an expert to conduct DNA testing for the defense. After careful consideration of the record, briefs and arguments of counsel, we find no prejudicial error.

The evidence tends to show the following. On 24 February 2000, a 14 year-old girl S.S. ("victim") was visiting her adult brother at his home in Charlotte. Victim's brother testified that he gave victim $20 and asked her to go to the store for him because he could not leave

his children alone in the house. Victim testified that she walked on a path through the woods that was a shortcut to a nearby convenience store. Victim testified that defendant grabbed her after she emerged from the woods and while she was walking towards the store. Victim stated that defendant held a knife against her neck, forced her back into the woods and threatened to kill her if she did not have sex with him. Victim removed her shoes, jeans and underwear after defendant threatened her. Defendant struggled with victim and penetrated victim's vagina briefly. Defendant demanded that victim perform fellatio on him by stating "[c]ome here, little [girl]; put this in [your] mouth," while putting his penis in front of victim's face. Victim refused and defendant penetrated her vaginally again. Victim testified that she saw a man walking down the street and screamed for help. This man was later identified as Robert Smith. Smith heard the victim screaming and saw her struggling with defendant. Smith called the police from the convenience store.

Charlotte-Mecklenburg Police Officer M.R. Grande responded between 4:30 and 5:00 p.m. on 24 February, arriving on the scene within minutes of Smith's call. Grande testified that he saw defendant on top of victim when he arrived. Victim appeared to be struggling with defendant and was screaming for help. Neither victim nor defendant was fully dressed when Grande found them. Victim warned Officer Grande as he approached that defendant had a knife. Defendant told Grande that he paid victim $25 in exchange for sex. Officer Grande called in additional police units. One of the other officers, Officer Sam Yaravitz, searched defendant for weapons and placed him in a police car. Defendant had no weapons on his person, but a knife was found at the scene in a bag he owned. Officer Yaravitz testified that while defendant was being transported to the detention center, defendant stated that he had sex with victim. Yaravitz had not been questioning defendant; defendant made this statement spontaneously. At the time of the alleged assault, defendant was 44 years old.

James Billy Freeman testified on defendant's behalf. He stated that defendant stopped by his house on 24 February 2000 to share a bottle of Wild Irish Rose wine. Freeman saw defendant and victim talking together in the street. Freeman also observed defendant and victim walking towards the store together.

Defendant testified that victim had approached him three weeks before the alleged assault. Defendant stated that victim offered to have sex with him in exchange for money but he did not have any

money on that day. Defendant testified that on the day of his arrest he arrived at Freeman's house between 9 and 11 a.m. and began drinking alcohol with the people there. Defendant testified that he had been paid earlier that day, so he had $25 to pay the victim. Defendant stated that he gave victim $25 to have intercourse with him. Then they walked together to the wooded area behind the store. Victim began taking off her clothes, but upon seeing a man on the street, she attacked defendant and began screaming for help. Defendant denies having intercourse or fellatio with victim. Defendant also stated that he never removed his knife from the plastic bag he was carrying. Defendant denied making any statement to the police other than the statement that he paid victim "$25 for it."

The jury returned a not guilty verdict on the first-degree kidnapping and statutory rape charges but convicted defendant of attempted statutory sexual offense. Defendant was sentenced to a term of imprisonment of a minimum of 151 months and a maximum of 191 months. Defendant appeals.

[1] Defendant first assigns error to the trial court's denial of his motion to dismiss the charge of statutory sexual offense. Defense counsel moved to dismiss all charges against the defendant after the State had finished presenting its evidence and again at the close of all evidence. Defense counsel specifically requested that the statutory sexual offense charge be dismissed because the evidence did not show that the act of fellatio occurred. The trial court denied defendant's motion to dismiss because the evidence presented supported a possible conviction for attempted statutory sexual offense.

We note at the outset that defendant did not object with specificity to the inclusion of a jury charge regarding attempted statutory sexual offense. However, defendant did object to the State's presentation of evidence on an attempt rather than a completed offense at the close of State's evidence. Our Rules of Appellate Procedure state that "[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make . . . ." N.C.R. App. P. 10(b)(1). Here, defendant did not cite the same reasons at trial for his request to dismiss charges that he now argues on appeal. We will treat defendant's appeal as a petition for certiorari to the extent that defendant did not properly preserve this issue for appellate review. N.C.R. App. P. 21.

First, we address defendant's motion to dismiss the statutory sexual offense charge. The Supreme Court has explained our standard of review on a motion to dismiss as follows:

> In ruling on a motion to dismiss the trial court is to consider the evidence in the light most favorable to the State. In so doing, the State is entitled to every reasonable intendment and every reasonable inference to be drawn from the evidence; contradictions and discrepancies do not warrant dismissal of the case— they are for the jury to resolve. The court is to consider all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State.

*State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E.2d 649, 652-53 (1982) (citations omitted). According to defendant's trial argument, the indictment accused defendant of a completed statutory sexual offense. However, the evidence presented, even if taken in the light most favorable to the State, shows that the act of fellatio was not completed. Defendant argued that the offense charged in the indictment varied from the evidence presented and therefore the motion to dismiss should have been granted. We disagree.

The true bill of indictment reads as follows, in pertinent part:

> [O]n or about the 24th day of February, 2000, in Mecklenburg County, [defendant] did unlawfully, wilfully, and feloniously engage in a sexual act with [victim], a person of the age of fourteen (14) years. At the time of the offense, the defendant was at least six (6) years older than the victim and was not lawfully married to the victim.

It is appropriate for a trial court to dismiss charges contained in a criminal pleading if the indictment fails to charge an offense or if the court does not have jurisdiction over the charged offense. *See* G.S. § 15A-954 (2001). At trial, defendant's argument was based upon the theory that an individual accused in an indictment of a completed offense could not then be convicted under that indictment for a lesser crime of attempt. We are not persuaded by this argument.

Our statutes provide that "[u]pon the trial of any indictment the prisoner may be convicted of the crime charged therein or of a less degree of the same crime, or of an attempt to commit the crime so charged, or of an attempt to commit a less degree of the same crime." G.S. § 15-170 (2001). A conviction for an attempt or incomplete crime can be based upon an indictment that charges a defendant with the

completed crime. *See State v. Willis*, 255 N.C. 473, 121 S.E.2d 854 (1961); *State v. Jones*, 227 N.C. 402, 42 S.E.2d 465 (1947); *State v. Batson*, 220 N.C. 411, 17 S.E.2d 511 (1941); *State v. Bennett*, 132 N.C. App. 187, 510 S.E.2d 698, *mandamus denied*, 541 S.E.2d 151 (1999); and *State v. Slade*, 81 N.C. App. 303, 343 S.E.2d 571, *disc. rev. denied and appeal dismissed*, 318 N.C. 419, 349 S.E.2d 604 (1986). Defendant's trial argument that the motion to dismiss should have been granted because defendant was indicted for a completed offense rather than an attempt is without merit.

[2] Defendant's argument on appeal is substantially different from his argument at trial. Defendant contends that the motion to dismiss should have been granted because the crime of attempted statutory sexual offense is a logical impossibility under North Carolina law. We disagree.

The crime of statutory sexual offense is outlined as follows:

A defendant is guilty of a Class B1 felony if the defendant engages in vaginal intercourse or a sexual act with another person who is 13, 14, or 15 years old and the defendant is at least six years older than the person, except when the defendant is lawfully married to the person.

G.S. § 14-27.7A(a) (2001). Defendants who engage in vaginal intercourse with children as described in G.S. § 14-27.7A(a) are generally charged with the crime of statutory rape. Defendants who engage in other sexual acts with children are usually charged with statutory sexual offense. A "sexual act" as defined by the North Carolina Pattern Jury Instructions includes any act of cunnilingus, fellatio, analingus, anal intercourse, or the penetration by any object of the genital or anal opening of a person's body. N.C.P.I.—Crim. 207.15.3 (2002). Statutory sexual offense and statutory rape are categorized as strict liability crimes. *See State v. Anthony*, 133 N.C. App. 573, 516 S.E.2d 195 (1999), *aff'd*, 351 N.C. 611, 528 S.E.2d 321 (2000). This categorization indicates that an individual may commit the crime of statutory sexual offense regardless of the defendant's mistake or lack of knowledge of the child's age. *Id.* It also means that consent is not a defense to the crime of statutory sexual offense. *Id.*

Taking the evidence presented in the light most favorable to the State, defendant demanded that victim perform fellatio on him, but the victim refused. Therefore, defendant could not be convicted of the completed act of statutory sexual offense.

In order to prove an attempt of any crime, the State must show: "(1) the intent to commit the substantive offense, and (2) an overt act done for that purpose which goes beyond mere preparation, but (3) falls short of the completed offense." *State v. Miller*, 344 N.C. 658, 667, 477 S.E.2d 915, 921 (1996) (citing *State v. Collins*, 334 N.C. 54, 431 S.E.2d 188 (1993)). An act must be done with specific intent to commit the underlying crime before a defendant may be convicted of an attempted crime. *See State v. Coble*, 351 N.C. 448, 527 S.E.2d 45 (2000). Here, the evidence in the light most favorable to the State shows that defendant committed an overt act that would have aided in the commission of statutory sexual offense. Defendant's placement of his penis in front of victim's face, coupled with his demand for oral sex, comprise an overt act sufficient to satisfy the second element of attempt. The act was not completed due to victim's refusal to perform fellatio, which satisfies the third element required to prove an attempt.

The remaining element is the intent to commit the substantive offense. Defendant argues that it is logically impossible to have the specific intent to commit a strict liability crime which does not require a specific intent. Defendant compares the attempt to commit a strict liability offense to the attempt to commit the general intent crime of second-degree murder. Our North Carolina Supreme Court has repeatedly stated that attempted second-degree murder is not a crime because "a charge of attempted second-degree murder would require a defendant to specifically intend what is by definition not a specifically intended result." *State v. Coble*, 351 N.C. 448, 452, 527 S.E.2d 45, 48 (2000). Defendant argues that since our State does not recognize attempted general intent crimes, it cannot logically recognize attempted strict liability or non-intentional crimes. We disagree.

We find the reasoning of the Washington Supreme Court in *State v. Chhom* persuasive in this case. *See State v. Chhom*, 911 P.2d 1014 (Wash. 1996). The Revised Code of Washington contains a statute which is similar in form and function to our G.S. § 14-27.7A. The crime is entitled "rape of a child" and is defined as having "sexual intercourse with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least twenty-four months older than the victim." Wash. Rev. Code Ann. § 9A.44.073 (West 2000). A second- and third-degree level of this offense are also defined in the statutes for offenses involving children of different ages. Wash. Rev. Code Ann. §§ 9A.44.076 and 9A.44.079 (West 2000). In *Chhom*, a defendant was convicted of attempted rape of a child

after the victim refused to perform fellatio on defendant. *See Chhom*, 911 P.2d at 1015. The Washington Supreme Court held that the strict liability offense could form the basis of a conviction for attempt. 911 P.2d at 1017. The court stated: "When coupled with the attempt statute, the intent required for attempted rape of a child is the intent to accomplish the criminal result: to have sexual intercourse." 911 P.2d at 1016-17. The defendant was not required to have knowledge that the victim was under the age of consent in order to be convicted of attempted rape of a child. 911 P.2d at 1017 (citing *State v. Davis*, 229 A.2d 842, 844 (N.H. 1967), *overruled on other grounds by State v. Ayer*, 612 A.2d 923 (N.H. 1992)). Requiring a defendant to have knowledge of a minor's age in order to convict him for attempt would not be logical if the defendant could be convicted of the completed crime regardless of his knowledge of the victim's age.

Applying the *Chhom* logic to our G.S. § 14-17.7A(a) statutory sexual offense, the intent required for attempted statutory sexual offense is the intent to engage in a sexual act. The intent element of attempted statutory sexual offense does not require that the defendant intended to commit a sexual act with an underage person, but only that defendant intended to commit a sexual act with the victim. Defendant's knowledge of victim's age or victim's consent are not defenses to the crime of attempted statutory sexual offense, just like these defenses are not valid if the crime of statutory sexual offense is completed. We hold that the crime of attempted statutory sexual offense is valid under North Carolina law. Here, the evidence presented in the light most favorable to the State indicates that defendant took victim to a secluded place and demanded fellatio. This evidence is sufficient to satisfy the intent element required to prove attempted statutory sexual offense. The trial court correctly denied defendant's motion to dismiss because there was evidence of each element of attempted statutory sexual offense. Accordingly, defendant's first assignment of error is overruled.

In addition, defendant asks this Court to review victim's sealed juvenile records to determine whether the records contain relevant impeaching evidence. The trial court inspected victim's juvenile records and determined that nothing in the records was relevant or admissible for cross-examination purposes. The trial court thus ruled against defendant. Following the procedure outlined in *State v. Hardy*, the trial court then ordered the sealed documents placed in the record for appellate review. *See State v. Hardy*, 293 N.C. 105, 235 S.E.2d 828 (1977). We have reviewed the sealed evidence and hold

STATE v. SINES

[158 N.C. App. 79 (2003)]

that the trial court did not abuse its discretion by refusing to admit this record into evidence. This assignment of error is denied.

**[3]** Defendant assigns error to the trial court's denial of his motion for funds to hire a DNA expert. Defendant argues that the trial court's denial of his motion for funding for a DNA test and an expert analysis of that test violated his constitutional rights.

G.S. § 7A-450(b) requires that an indigent person be provided with counsel and the "necessary expenses of representation." Also, G.S. § 7A-454 permits the payment of fees for an expert witness's services according to the regulations adopted by the Office of Indigent Defense Services. However, before a defendant is entitled to the appointment of an expert witness, the defendant must show a particularized need for that assistance. *See State v. Page*, 346 N.C. 689, 488 S.E.2d 225 (1997), *cert. denied*, 522 U.S. 1056, 139 L. Ed. 2d 651 (1998). "To establish a particularized need for expert assistance, a defendant must show that: (1) he will be deprived of a fair trial without the expert assistance, or (2) there is a reasonable likelihood that the expert will materially assist him in the preparation of his case." *Page*, 346 N.C. at 696, 488 S.E.2d at 230. The appointment of an expert witness to assist an indigent in the preparation of his case is a decision within the discretion of the trial court. *State v. Gray*, 292 N.C. 270, 233 S.E.2d 905 (1977).

Defendant here failed to demonstrate the necessary particularized need in order to qualify for funds for a DNA test or appointment of a DNA expert witness. Neither defendant nor the State questioned the identity of victim's alleged attacker. Although the State had a vaginal swab taken from the victim on the day of the attack, the State did not introduce that evidence or refer to it in any way. In fact, the State had not performed DNA analysis on that swab so it was not useful as inculpatory or exculpatory evidence. The absence of defendant's DNA would not have been an absolute defense to any of the crimes for which he was charged. Specifically the absence or presence of defendant's DNA from victim's vaginal area has no relevance to the crime of attempted statutory sexual offense for which defendant was convicted. In light of all of these circumstances, it cannot be said that the trial court abused its discretion in refusing to give defendant funds to hire a DNA expert. Therefore, this assignment of error is overruled.

Accordingly, we conclude that defendant received a fair trial free from prejudicial error.

No error.

Judges HUNTER and CALABRIA concur.