IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-186

No. COA20-147

Filed 4 May 2021

Guilford County, Nos. 15 CRS 93682, 93853

STATE OF NORTH CAROLINA

v.

SHANION J. DONTA WATSON

Appeal by defendant from judgments entered 12 July 2019 by Judge David L. Hall in Guilford County Superior Court. Heard in the Court of Appeals 10 March 2021.

*Attorney General Joshua H. Stein, by Special Deputy Attorneys General Anne M. Middleton and Sherri Horner Lawrence, for the State.*

*Michael E. Casterline for defendant-appellant.*

ZACHARY, Judge.

¶ 1 Defendant Shanion J. Donta Watson appeals from judgments entered upon a jury's verdicts finding him guilty of first-degree murder under the felony-murder rule, felony larceny of a motor vehicle, and felony child abuse inflicting serious mental injury. On appeal, Defendant argues that we must vacate his first-degree murder conviction for two reasons: first, because the predicate felony underlying his conviction under the felony-murder rule—statutory rape of a child under the age of 13—lacks an intent element, and second, because the jury acquitted Defendant of the

predicate felony. After careful review, we conclude that Defendant received a fair trial, free from error.

## *Background*

¶ 2       In December 2015, Chiquita Adams was living with her 11-year-old daughter, Tracy,[1] in Greensboro, North Carolina. Defendant was Ms. Adams' boyfriend. On the night of 24 December 2015, Ms. Adams and Tracy stayed in a hotel in High Point, North Carolina. Ms. Adams drove them there, and Defendant arrived at the hotel about an hour after Ms. Adams and Tracy checked in.

¶ 3       Tracy fell asleep at around 10:00 p.m. She awoke at approximately 2:00 a.m. and saw Defendant on the floor next to her bed. Defendant grabbed Tracy's leg, picked her up, and carried her to the bathroom; she could not scream because he had his hand covering her mouth. However, Tracy was able to grab a pillow from the bed and threw it toward her mother. After Defendant placed Tracy on the bathroom sink and told her to "be quiet," Ms. Adams opened the bathroom door. Tracy told her mother, "Please don't leave me," and Defendant told Ms. Adams, "don't believe her." When Ms. Adams approached Defendant, he knocked her to the floor and began hitting and choking her. After Ms. Adams lost consciousness, Defendant placed her on the bed and returned to the bathroom, telling Tracy, "pull your pants down." Ms. Adams

---

[1] In accordance with N.C.R. App. P. 42, we refer to the juvenile by a pseudonym in order to protect her identity.

awakened, and she and Tracy tried to exit the hotel room, but Defendant stopped them. Ms. Adams and Defendant then engaged in a prolonged struggle. At one point, Tracy tried to use her cell phone—a Christmas gift from her father—to call 911, but Defendant grabbed it from her and put it in his pocket.

¶ 4        While Ms. Adams fought with Defendant, Tracy was in the bathroom screaming and praying. When she looked out of the bathroom, she saw her mother on the bed, not moving. Defendant again told Tracy to pull her pants down; this time, she did, and Defendant had sexual intercourse with her on the bed. Eventually, Defendant let her get up, and she ran to the bathroom and locked the door.

¶ 5        At some point, Tracy fell asleep in the hotel bed. When she awoke at around 11:00 a.m., Defendant was still in the hotel room. Defendant told Tracy that Ms. Adams was asleep. Tracy touched her mother's body and noticed that she was not breathing. Tracy had "a feeling that she was dead" but "didn't want to believe it fully." Defendant told Tracy to take a shower, so she did, and when she came out of the bathroom, Defendant had left with Ms. Adams' car keys. The hotel housekeeper came to the door and asked where Tracy's mother was. At first, Tracy told the housekeeper that her mother was asleep. Then she began to cry and said, "I don't know, I don't know. Help me, help me." The housekeeper called 911.

¶ 6        The High Point Fire Department responded to the call first. After reporting that Ms. Adams was dead, the firefighters waited for law enforcement officers and

paramedics to arrive. Upon arrival at the scene, a High Point Police Department officer spoke with Tracy, who told him that Defendant was her mother's boyfriend and provided Defendant's name. She told police that her cell phone and her mother's car were missing, and that she had tried to wake her mother up that morning, but she could not rouse her. Tracy appeared to law enforcement officers to be in shock; she did not tell the officers about the altercation between Defendant and her mother or that Defendant had sexual intercourse with her.

¶ 7 A phone carrier assisted detectives in determining the location of Tracy's cell phone, which was "pinging" from an apartment in High Point. Upon their arrival to the apartment, the detectives spotted Ms. Adams' tan Hyundai Sonata parked out front. A canine officer discovered Tracy's cell phone behind the apartments. A phone carrier forwarded to detectives text messages sent from Defendant's cell phone to his sister's cell phone. Detectives went to Defendant's sister's apartment, and she told them that Defendant had been there earlier that afternoon, showered, changed his clothes, and left. Officers collected Defendant's discarded clothes, which included clothing that matched the outfit he appeared to be wearing in video-camera footage captured when he left the hotel room. The shirt had a reddish stain on it.

¶ 8 An officer took Tracy to the Hope House Children's Advocacy Center ("CAC"). A child interviewer with the CAC told Tracy that her mother was dead. Tracy told the interviewer that she had been asleep all night and did not hear anything.

¶ 9    Detectives arrested Defendant at his sister's apartment at around 10:00 p.m. on 26 December 2015.

¶ 10    On 28 December 2015, the Medical Examiner conducted an autopsy of Ms. Adams' body that revealed that she had facial lacerations; bruises, abrasions, and lacerations in her mouth and on her tongue; and evidence of strangulation, including hemorrhages of the eyes, an abraded contusion on her neck, hemorrhaging in the muscles of her neck, and two fractures of the cricoid cartilage. The medical examiner concluded that Ms. Adams died as a result of strangulation.

¶ 11    On 28 December 2015, Tracy's father arrived in North Carolina from Texas to pick up Tracy, and Tracy moved to Texas to live with him. In Texas, Tracy struggled in school, did not have many friends, did not want to sleep in a room by herself, and suffered from panic attacks. Tracy still had not told anybody what had happened to her or what she saw. Finally, in July 2017, she told her father what had happened. During an interview at a CAC in Texas, Tracy told an interviewer that Defendant had raped her and killed her mother.

¶ 12    On 12 July 2016, a Guilford County grand jury indicted Defendant for larceny of a motor vehicle, child abuse inflicting serious mental injury, and first-degree murder. On 15 August 2017, a Guilford County grand jury indicted Defendant for statutory rape of a child by an adult, in violation of N.C. Gen. Stat. § 14-27.23.

¶ 13    Defendant was tried during the 24 June 2019 session of Guilford County

Superior Court before the Honorable David L. Hall. Defendant represented himself, with standby counsel appointed. At the close of the State's evidence, Defendant moved to dismiss the charges for insufficiency of the evidence. The trial court denied Defendant's motion. The trial court instructed the jury on first-degree murder, on the bases of both premeditation and deliberation and on the felony-murder rule, with statutory rape as the predicate felony. The trial court also instructed the jury on second-degree murder, statutory rape of a child by an adult, felony larceny of a motor vehicle, and felony child abuse inflicting serious mental injury.

¶ 14    The jury convicted Defendant of first-degree murder under the felony-murder rule, felony larceny of a motor vehicle, and felony child abuse inflicting serious mental injury. The jury acquitted Defendant of statutory rape. After the jury rendered its verdicts, standby counsel renewed Defendant's motion to dismiss for insufficiency of the evidence.

¶ 15    The trial court consolidated judgment on Defendant's convictions for felony larceny of a motor vehicle and felony child abuse, entering one judgment on those convictions and one judgment on the conviction for first-degree murder. The trial court sentenced Defendant to life imprisonment without the opportunity for parole for the murder conviction, and imposed a consecutive 19- to 32-month sentence for the larceny and child-abuse convictions. Defendant noticed appeal in open court.

### Discussion

¶ 16        On appeal, Defendant contends that this Court must vacate his conviction for first-degree murder based on the felony-murder rule for two interrelated reasons. First, Defendant contends that the predicate felony of statutory rape of a child under the age of 13 cannot support a felony-murder conviction because statutory rape lacks an intent element. Defendant argues that, because statutory rape is a strict-liability offense, it therefore lacks an intent element, and only *attempted* statutory rape—which Defendant concedes does include an intent element—could support felony murder. However, Defendant argues that in the instant case, the trial court did not properly instruct the jury on the charge of attempted statutory rape, and therefore, neither completed nor attempted statutory rape could support the felony murder conviction.

¶ 17        Defendant also raises a second, related argument: he contends that his first-degree murder conviction must be vacated because the jury acquitted him of the predicate felony underlying the State's theory of felony murder. According to Defendant, because the jury was not instructed on attempted statutory rape, it could not properly consider that offense in support of its felony-murder verdict; thus, his first-degree murder conviction must be vacated.

¶ 18        After careful review, we hold that statutory rape sufficiently supported Defendant's felony-murder conviction on the present facts, and that he is not entitled to vacatur of his conviction based on his acquittal of the predicate felony. Having so

concluded, we need not address Defendant's argument that the jury was not properly instructed on attempted statutory rape. Therefore, we conclude that Defendant received a trial free from error.

*I. Preservation*

¶ 19        As a preliminary matter, although Defendant characterizes the trial court's alleged error as one relating to erroneous jury instructions, in fact, much of Defendant's argument sounds in sufficiency of the evidence issues. However, defense counsel conceded at oral argument before this Court that the State presented sufficient evidence to send the charge of statutory rape to the jury. Defendant's argument on appeal is, in essence, an argument that the charge of completed statutory rape is insufficient as a matter of law to support a felony-murder conviction, and in the alternative, that an acquittal of statutory rape renders the conduct insufficient as a matter of law to support a felony-murder conviction. The State argues that Defendant failed to preserve any sufficiency of the evidence issues for appeal by failing to make a properly timed motion to dismiss. We conclude that Defendant adequately preserved any sufficiency arguments.

¶ 20        At the close of the State's evidence, Defendant moved to dismiss the charges for insufficiency of the evidence, which the trial court denied. Standby counsel, on behalf of Defendant, renewed the motion to dismiss after the jury rendered its verdicts but before the trial court entered judgment. This motion complied with N.C.

Gen. Stat. § 15A-1227, which governs motions for dismissal for insufficient evidence:

> (a) A motion for dismissal for insufficiency of the evidence to sustain a conviction may be made at the following times:
>
> . . . .
>
> > (3) After return of a verdict of guilty and before entry of judgment.
>
> (b) Failure to make the motion at the close of the State's evidence or after all the evidence is not a bar to making the motion at a later time as provided in subsection (a).

N.C. Gen. Stat. § 15A-1227(a)(3), (b) (2019).

We therefore conclude that Defendant properly preserved an objection to the sufficiency of the evidence. *See State v. Golder*, 374 N.C. 238, 246, 839 S.E.2d 782, 788 (2020) (holding that a defendant preserves all insufficiency of the evidence issues by making a timely motion to dismiss).

*II. Statutory Rape as Predicate Felony*

Defendant argues that statutory rape is a strict-liability offense, and as such, it cannot serve as a predicate felony for a felony-murder charge because it lacks any element of criminal intent. We disagree.

Section 14-17(a) of the North Carolina General Statutes defines first-degree murder and enumerates the offenses that may serve as predicate felonies for first-degree murder under the felony-murder rule: "A murder . . . which shall be committed in the perpetration or attempted perpetration of any arson, rape or a sex offense,

robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon shall be deemed to be murder in the first degree[.]" Our Supreme Court has noted that the predicate crimes listed in § 14-17(a) share a common requirement: "actual intent on the part of the accused to commit the crime." *State v. Jones*, 353 N.C. 159, 169, 538 S.E.2d 917, 925 (2000).

¶ 24       Here, the State predicated Defendant's felony-murder charge on the crime of statutory rape of a child by an adult, as defined by N.C. Gen. Stat. § 14-27.23(a): "A person is guilty of statutory rape of a child by an adult if the person is at least 18 years of age and engages in vaginal intercourse with a victim who is a child under the age of 13 years." The crime of statutory rape does not require proof of knowledge of the child's age, and it "requir[es] nothing more than commission of the act prohibited" to support a conviction. *State v. Anthony*, 133 N.C. App. 573, 578, 516 S.E.2d 195, 198 (1999), *aff'd*, 351 N.C. 611, 528 S.E.2d 321 (2000).

¶ 25       Defendant argues that statutory rape lacks the necessary intent to support a felony-murder charge—the "actual intent on the part of the accused to commit the crime." *Jones*, 353 N.C. at 169, 538 S.E.2d at 925. We disagree with Defendant's interpretation of "strict-liability offense." Rape is a general-intent crime. *Id.* at 167, 538 S.E.2d at 924. "[T]he forbidden conduct under the statutory rape provision is the act of intercourse itself[.]" *State v. Weaver*, 306 N.C. 629, 637, 295 S.E.2d 375, 380 (1982) (citation omitted), *disapproved of on other grounds by State v. Collins*, 334 N.C.

54, 431 S.E.2d 188 (1993). As such, statutory rape is a strict-liability offense only in that consent and mistake of age are not valid defenses. *Anthony*, 133 N.C. App. at 579, 516 S.E.2d at 198–99. We do not take those limitations on *defenses* to mean that the commission of statutory rape does not require the intent to commit an act, that is, sexual intercourse, or "the slightest penetration of the sexual organ of the female by the sexual organ of the male." *State v. Murry*, 277 N.C. 197, 203, 176 S.E.2d 738, 742 (1970).

¶ 26 Defendant argues, however, that "[t]he *Jones* holding limits application of the felony murder rule to those felonies with an actual intent element[.]" *Jones* involved an impaired-driving collision that resulted in two deaths; the defendant was convicted of, *inter alia*, first-degree murder under the felony-murder rule, with the crime of assault with a deadly weapon inflicting serious injury as the predicate felony. 353 N.C. at 162–63, 538 S.E.2d at 921. The defendant operated a motor vehicle in a culpably or criminally negligent manner such that it constituted a deadly weapon. *Id.* at 164–65, 538 S.E.2d at 922–23.

¶ 27 The Supreme Court examined N.C. Gen. Stat. § 14-17 and determined that

> three types of criminal conduct . . . qualify as first-degree
> murder: (1) willful, deliberate, and premeditated killings
> (category 1); (2) killings resulting from poison,
> imprisonment, starvation, torture, or lying in wait
> (category 2); and (3) killings that occur during specifically
> enumerated felonies or during a felony committed or
> attempted with the use of a deadly weapon (category 3). All

of these categories require that the defendant have a *mens rea* greater than culpable or criminal negligence; that is, they all require that the defendant had actual intent to commit the act that forms the basis of a first-degree murder charge.

*Id.* at 166, 538 S.E.2d at 923–24 (citation and internal quotation marks omitted).

¶ 28   Importantly, the *Jones* Court noted that the conduct in category 3 does not necessarily require an intent to kill; "however, the actual intent to commit the underlying felony is required. This is not to imply that an accused must intend to break the law, but rather that *he must be purposely resolved to participate in the conduct that comprises the criminal offense.*" *Id.* at 167, 538 S.E.2d at 924 (emphasis added).

¶ 29   Concluding that all of the enumerated felonies in the murder statute "require a level of intent greater than culpable negligence on the part of the accused[,]" *id.*, the *Jones* Court held that "culpable negligence may not be used to satisfy the intent requirements for a first-degree murder charge[,]" *id.* at 163, 538 S.E.2d at 922.

¶ 30   We disagree with Defendant that statutory rape is analogous to a culpably or criminally negligent offense and that it may not serve as a predicate felony for felony murder. Indeed, the logic of *Jones* seems to support a conclusion to the contrary. Statutory rape of a child by an adult requires that the defendant "engage[ ] in vaginal intercourse with a victim who is a child under the age of 13 years." N.C. Gen. Stat. § 14-27.23(a). We cannot imagine a scenario in which a defendant could "engage[ ] in

vaginal intercourse with a victim" in a criminally negligent manner; rather, statutory rape, unlike impaired driving that results in death, such as that at issue in *Jones*, requires that the perpetrator "be purposely resolved to participate in the conduct that comprises the criminal offense." *Jones*, 353 N.C. at 167, 538 S.E.2d at 924. This is true regardless of the fact that "an individual may commit the crime of statutory [rape] regardless of the defendant's mistake or lack of knowledge of the child's age" and regardless of the victim's alleged consent. *State v. Sines*, 158 N.C. App. 79, 84, 579 S.E.2d 895, 899, *cert. denied*, 357 N.C. 468, 587 S.E.2d 69 (2003).

¶ 31       Defendant argues, however, that while attempted statutory rape possesses an intent element, *completed* statutory rape does not. In *Sines*, the defendant argued that "attempted statutory sexual offense is a logical impossibility under North Carolina law"[2] because "it is logically impossible to have the specific intent to commit a strict liability crime which does not require a specific intent." *Id.* at 84–85, 579 S.E.2d at 899–900. Our Court rejected this argument and explained that, in order to prove attempt—a specific-intent offense—"the State must show: (1) the intent to commit the substantive offense, and (2) an overt act done for that purpose which goes

---

[2] Statutory sexual offense with a child by an adult is a slightly broader offense than statutory rape in that a defendant commits statutory sexual offense by engaging in a "sexual act," N.C. Gen. Stat. § 14-27.28, defined as any act of cunnilingus, fellatio, analingus, anal intercourse, or the penetration by any object of the genital or anal opening of a person's body, with a child who is under 13 years old. N.C.P.I.--Crim. 207.45A (2019)

beyond mere preparation, but (3) falls short of the completed offense." *Id.* at 85, 579 S.E.2d at 899 (citation and internal quotation marks omitted).

¶ 32        In holding that attempted statutory sexual offense is a valid crime under North Carolina law, our Court rejected the defendant's argument that the offense does not require intent:

> [T]he intent required for attempted statutory sexual offense is the intent to engage in a sexual act. The intent element of attempted statutory sexual offense does not require that the defendant intended to commit a sexual act with an underage person, but only that [the] defendant intended to commit a sexual act with the victim. [The d]efendant's knowledge of [the] victim's age or [the] victim's consent are not defenses to the crime of attempted statutory sexual offense, just like these defenses are not valid if the crime of statutory sexual offense is completed.

*Id.* at 86, 579 S.E.2d at 900.

¶ 33        The logic and holding of *Sines* apply with equal force to the issue at hand. It is true that "the intent element of . . . statutory [rape] does not require that the defendant intend[ ]" to engage in vaginal intercourse with an underage person, because mistake or lack of knowledge of age is not a defense. *Id.* Nonetheless, both completed and attempted statutory rape require "that [the] defendant intend[ ] to commit a sexual act with the victim." *Id.*

¶ 34        Applying the analysis of the *Jones* and *Sines* decisions to the facts at hand, we conclude that the intent to commit the underlying act of sexual intercourse, inherent

in the offense of statutory rape, satisfies the intent required for a crime to serve as the basis of a felony-murder charge. Thus, the trial court did not err in denying Defendant's motion to dismiss.

*III. Acquittal of Statutory Rape*

¶ 35        Defendant further argues that his first-degree murder conviction must be vacated because the jury acquitted him of the predicate felony. Defendant's argument is, in essence, that the jury's verdicts—finding him guilty of felony murder, with statutory rape as the underlying felony, but not guilty of statutory rape—are inconsistent and contradictory. We disagree.

¶ 36        First-degree murder under the felony-murder rule does not require proof of premeditation and deliberation. *State v. Wright*, 282 N.C. 364, 369, 192 S.E.2d 818, 822 (1972). Instead, in felony-murder cases, "there is a fictional transfer of the malice which plays a part in the underlying felony to the unintended homicide so that the homicide is deemed committed with malice." *State v. Gardner*, 315 N.C. 444, 456, 340 S.E.2d 701, 710 (1986). As we concluded above, statutory rape of a child under 13 by an adult may serve as the underlying felony in support of a charge of first-degree murder under the felony-murder rule. However, as explained below, the jury need not *convict* on the predicate felony where the evidence presented at trial is sufficient to support a conviction of both felony murder and the underlying felony.

¶ 37        In North Carolina, our jurisprudence distinguishes between verdicts that are

inconsistent and those that are both inconsistent and legally contradictory. *See, e.g.*, *State v. Mumford*, 364 N.C. 394, 398, 699 S.E.2d 911, 914 (2010). "It is firmly established that when there is sufficient evidence to support a verdict, mere inconsistency will not invalidate the verdict." *Id.* (citation and internal quotation marks omitted). However, verdicts that are inconsistent *and* contradictory entitle a defendant to relief. *Id.*

¶ 38        Verdicts are inconsistent when they reflect some logical flaw or compromise in the jury's reasoning. For example, in *Mumford*, the defendant was convicted of five counts of felony serious injury by vehicle but acquitted of the lesser offense of driving while impaired. *Id.* at 401, 699 S.E.2d at 916. Felony serious injury by vehicle, defined by N.C. Gen. Stat. § 20-141.4(a3), may be proved by a showing that the defendant "was engaged in the offense of impaired driving[.]" The Supreme Court concluded that these convictions were merely inconsistent, not legally contradictory, because conviction of serious injury by vehicle "does not require a *conviction* of driving while impaired . . . but only requires a finding that the defendant was engaged in the conduct described" by the offense of driving while impaired. *Mumford*, 364 N.C. at 401, 699 S.E.2d at 916. And because the State presented sufficient evidence to support the defendant's convictions for felony serious injury by vehicle, the defendant was not entitled to relief. *Id.*

¶ 39        On the other hand, a verdict is legally contradictory, or mutually exclusive,

when it "purports to establish that the defendant is guilty of two separate and distinct criminal offenses, the nature of which is such that guilt of one necessarily excludes guilt of the other." *Id.* at 400, 699 S.E.2d at 915 (citation omitted). For example, where a defendant was convicted of one count of embezzlement and one count of obtaining property by false pretenses based on the same facts, the Supreme Court concluded that the verdicts were legally contradictory:

> [T]o constitute embezzlement, the property in question initially must be acquired lawfully, pursuant to a trust relationship, and then wrongfully converted. On the other hand, to constitute false pretenses the property must be acquired unlawfully at the outset, pursuant to a false representation. This Court has previously held that, since property cannot be obtained simultaneously pursuant to both lawful and unlawful means, guilt of either embezzlement or false pretenses necessarily excludes guilt of the other. . . .
>
> [Therefore] a defendant cannot be convicted of both embezzlement and false pretenses based upon a single transaction[.]

*State v. Speckman*, 326 N.C. 576, 578, 391 S.E.2d 165, 166–67 (1990) (citations omitted).

¶ 40        Merely inconsistent verdicts do not entitle the defendant to relief. The United States Supreme Court settled the issue in *United States v. Powell*, in which the Court addressed an argument that acquittal of a predicate felony necessitated relief from conviction for the compound felony:

> [R]espondent's argument that an acquittal on a predicate offense necessitates a finding of insufficient evidence on a compound felony count simply misunderstands the nature of the inconsistent verdict problem. Whether presented as an insufficient evidence argument, or as an argument that the acquittal on the predicate offense should collaterally estop the Government on the compound offense, the argument necessarily assumes that the acquittal on the predicate offense was proper—the one the jury "really meant." This, of course, is not necessarily correct; all we know is that the verdicts are inconsistent. The Government could just as easily—and erroneously—argue that since the jury convicted on the compound offense the evidence on the predicate offense must have been sufficient. The problem is that the same jury reached inconsistent results[.]

469 U.S. 57, 68, 83 L. Ed. 2d 461, 470–71 (1984).

¶ 41        Inconsistent verdicts, therefore,

> present a situation where "error," in the sense that the jury has not followed the court's instructions, most certainly has occurred, but it is unclear whose ox has been gored. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course.

*Id.* at 65, 83 L. Ed. 2d at 468–69.

¶ 42        Here, Defendant's convictions are not legally contradictory. The State submitted three theories of murder to the jury: (1) first-degree murder based on premeditation and deliberation, (2) first-degree murder based on felony murder, and (3) second-degree murder. The trial court's instructions allowed the jury to find Defendant guilty of felony murder if it found that he killed Ms. Adams "while

committing or while attempting to commit the crime of statutory rape of a child under the age of thirteen[.]" The jury found defendant guilty of first-degree murder based on felony murder but not guilty of the separately charged offense of statutory rape. But the jury may rely on the *act* of committing or attempting statutory rape in support of felony murder without a *conviction* of statutory rape. *See Mumford*, 364 N.C. at 401, 699 S.E.2d at 916; *see also* N.C. Gen. Stat. § 14-17(a) ("A murder . . . which shall be committed in the *perpetration or attempted perpetration* of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with the use of a deadly weapon shall be deemed to be murder in the first degree[.]" (emphasis added)).

¶ 43        Further, had the jury found Defendant guilty of both felony murder and the predicate felony, the trial court would have been required to arrest judgment on the predicate felony because "a defendant may not be punished both for felony murder and for the underlying, 'predicate' felony, even in a single prosecution." *State v. Coleman*, 161 N.C. App. 224, 234, 587 S.E.2d 889, 896 (2003) (quoting *Gardner*, 315 N.C. at 460, 340 S.E.2d at 712). Moreover, the State could have proceeded solely on felony murder based on statutory rape without charging statutory rape; indeed, our Supreme Court in *State v. Carey* suggested that

> the better practice where the State prosecutes a defendant
> for first-degree murder on the theory that the homicide was
> committed in the perpetration or attempt to perpetrate a

felony under the provisions of G.S. 14-17, would be that the solicitor should not secure a separate indictment for the felony. If he does, and there is a conviction of both, the defendant will be sentenced for the murder and the judgment will be arrested for the felony under the merger rule.

288 N.C. 254, 274, 218 S.E.2d 387, 400 (1975), *vacated in part on other grounds and remanded*, 428 U.S. 904, 49 L. Ed. 2d 1209 (1976). Under those circumstances, where the State presented sufficient evidence of the predicate felony, we would not doubt the jury's determination that the defendant committed the underlying offense merely because there was no conviction on the underlying offense.

¶ 44 That the jury's verdicts seem inconsistent does not entitle Defendant to relief because "it is unclear whose ox has been gored." *Powell*, 469 U.S. at 65, 83 L. Ed. 2d at 469. Defendant suggests that the jury reached the conclusions it did because it was unconvinced that Defendant perpetrated a statutory rape. However, "[i]t is equally possible that the jury, convinced of guilt, properly reached its conclusion on the [felony-murder charge], and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the [predicate] offense." *Id.* at 65, 83 L. Ed. 2d at 468. Here, Defendant "is given the benefit of h[is] acquittal on the counts on which [ ]he was acquitted, and it is neither irrational nor illogical to require h[im] to accept the burden of conviction on the counts on which the jury convicted." *Id.* at 69, 83 L. Ed. 2d at 471.

### *Conclusion*

¶ 45      We conclude that statutory rape sufficiently supported Defendant's felony-murder conviction and that the jury's verdicts were not legally contradictory. Accordingly, we conclude that Defendant received a fair trial, free from error.

NO ERROR.

Judges WOOD and JACKSON concur.